1  DAVID F. FAUSTMAN, State Bar No. 081862
2  KAREN L. STEPHENSON, State Bar No. 205664
   GROTTA, GLASSMAN & HOFFMAN, P.C.
3  388 Market Street, Suite 500
   San Francisco, CA 94111
4  Telephone: (415) 296-3885
   Facsimile: (415) 296-3886
5
6  Attorneys for Defendant
   FRANCES MURILLO dba MURILLO'S MEXICAN FOOD
7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  RON WILSON, an individual, | Case No. 2:05-CV-01948-DFL-JFM |
| 12         Plaintiff, | Assigned to The Honorable David F. Levi |
| 13  v. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO HAVE** |
| 14  FRANCES MURILLO, dba MURILLO'S | **RONALD S. WILSON AND THOMAS E. FRANKOVICH DECLARED** |
| 15  RESTAURANT; and DOES 1-10, inclusive, | **VEXATIOUS LITIGANTS, FOR PRE-FILING ORDERS AND FOR** |
| 16         Defendants. | **SANCTIONS AGAINST WILSON AND FRANKOVICH;** |
| 17  | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 18  | **THEREOF** |
| 19  | |
| 20  | [Supporting Declarations, Request For Judicial Notice, [Proposed] Orders and |
| 21  | Motion For Summary Judgment Filed Under Separate Cover] |
| 22  | |
| 23  | **Date:   June 7, 2006** |
| 24  | **Time:   10:00 a.m.** |
| 25  | **Location: Room 7** |
| 26  |        **501 "I" Street, #4-200** |
| 27  |        **Sacramento, CA 95814** |
| 28  | |

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900                                - 1 -

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

**TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 7, 2006, at 10:00 a.m., or as soon thereafter as counsel may be heard in Room 7 of the above-entitled Court, defendant Frances Murillo, dba Murillo's Mexican Food ("Murillo"), will and hereby does move the Court for orders (1) declaring that plaintiff Ronald S. Wilson ("Wilson") and his counsel of record, Thomas E. Frankovich, A Professional Law Corporation ("Frankovich"), are vexatious litigants; (2) requiring Wilson to obtain leave of court before filing any new litigation under Title III of the Americans with Disabilities Act of 1990 ("ADA") in the Eastern District of California; (3) requiring Frankovich to obtain leave of court before he can represent any plaintiff in filing claims under the ADA in the Eastern District of California; and (4) imposing sanctions against Wilson and Frankovich.

This motion is brought pursuant to 28 U.S.C Section 1651 (the "All Writs Act"), 28 U.S.C. Section 1927, and the Court's inherent authority on the grounds that Wilson and Frankovich have engaged in a pattern of abusive and predatory litigation in the Federal Courts in California. This pattern must be rectified. Between the two of them, Wilson and Frankovich have flooded the Federal Courts in California with **over 600 lawsuits** over the past six years, **156 of which were filed in the Eastern District**. Wilson and Frankovich file sham ADA claims as a pretext to gain access to the Federal Courts while pursuing damage remedies that are available exclusively under state law.

Wilson and Frankovich are being provided with adequate notice to oppose this motion and any orders before they are entered, and Murillo will provide the Court with an adequate record to support vexatious litigant orders. Murillo's proposed orders are narrowly tailored to redress the particular, egregious litigation abuses committed by Wilson and Frankovich.

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

- 2 -

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

1    This motion will be based on this notice of motion, the attached Memorandum of Points

2    and Authorities, the accompanying Request For Judicial Notice and attached exhibits, the

3    Declarations of Karen L. Stephenson, Frances Murillo, Tim Fallis and Kim Blackseth, the

4    [Proposed] Orders, the motion for summary judgment under Federal Rule of Civil Procedure 56

5

6    filed concurrently herewith, and all other papers and pleadings filed in this action.

7

8    Dated: May 4, 2006                      GROTTA GLASSMAN & HOFFMAN, P.C.

9

10                                           By

11                                              KAREN L. STEPHENSON
                                                Attorneys for Defendant
12                                              FRANCES MURILLO
                                                dba MURILLO'S MEXICAN FOOD

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page Nos.

I.   INTRODUCTION ........................................................... 4

II.  SUMMARTY OF ARGUMENT ........................................... 5

III. STATEMENT OF FACTS ................................................ 9

    A.   Murillo's Mexican Food Restaurant ...................... 9

    B.   Wilson, CARD and A.C.C.E.S.S. ......................... 9

    C.   Wilson Poses As An "Expert" ............................ 11

    D.   Wilson's Litigation History ............................ 13

    E.   Thomas E. Frankovich .................................... 14

    F.   Wilson's Assault on Murillo ............................ 15

IV.  ARGUMENT .............................................................. 18

    A.   The Abuse of Federal and State Disability Access Statutes ... 18

        1.  The Americans With Disabilities Act of 1990 ... 18

        2.  The Unruh Act and The Disabled Persons Act ... 18

        3.  The "Cottage Industry" of ADA Plaintiffs ... 19

    B.   The Court Has Authority to Issue Pre-Filing Orders Against Plaintiff Wilson and Attorney Frankovich ... 21

    C.   Wilson Satisfies The Standard For A Vexatious Litigant ... 23

        1.  Wilson Has A History of Vexatious Litigation ... 24

            a.  The Volume of Lawsuits ... 25

            b.  Textual and Factual Similarity of Pleadings ... 25

GROTTA, GLASSI
& HOFFMAN, P.C.
COUNSELLORS AT LAW
388 MARKET STREET
SAN FRANCISCO, CA 94111

Page Nos.

    (1)    Identical Complaints In the Eastern District   26

    (2)    Wilson Has Filed Similar Cases In This Courtroom   31

   c.    Credibility   33

   d.    *Wilson v. Murillo* Is Strikingly Similar To Other Wilson/Frankovich Complaints   34

   2.    No Objective, Good Faith Expectation of Prevailing   35

      a.    Wilson Has Disclaimed the Primary Allegations of the Complaint   35

      b.    The Only Claim That Wilson Has Not Abandoned Is A Supposed "Retaliation" Claim Which The Uncontroverted Evidence Demonstrates To Be Completely Fabricated   37

      c.    Wilson's Motivation For Filing ADA Lawsuits Is His Own Financial Gain, Not Increased Accessibility   39

   3.    Wilson Is Always Represented By Counsel In His ADA Lawsuits   40

   4.    Wilson's Lawsuits Are A Burden On The Courts   41

   5.    No Other Sanction Would Be Adequate   41

D.    Frankovich Satisfies The Standard for A Vexatious Litigator   42

   1.    Frankovich Already Has Been Declared Vexatious   42

      a.    Frankovich's ADA Litigation History   42

      b.    Frankovich's Form Complaint   42

         (1)    The Frankovich Form Complaint   43

GROTTA, GLASS!
& HOFFMAN, P.C.
COUNSELLORS AT LAW
388 MARKET STREET
SAN FRANCISCO, CA 94111

**TABLE OF CONTENTS continued**

Page Nos.

(2)    Wilson And Frankovich Together Have
Filed Almost Identical Complaints    44

c.    Excessive Compensatory Damages    48

d.    Quick Settlements    48

2.    This Case Is Similarly Frivolous and Vexatious    49

3.    Gamesmanship and Dilatory Tactics    49

4.    Frankovich Also Files Cases In State Court Alleging
Violations of Federal Law    51

5.    The Requested Order Is Proper    52

V.    Murillo Is Entitled to Monetary Sanctions    52

A.    28 U.S.C. Section 1927    52

B.    The Court's Inherent Authority To Issue Sanctions    53

VI.    CONCLUSION    55

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GROTTA, GLASS!
& HOFFMAN, P.C.
COUNSELLORS AT LAW
388 MARKET STREET
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

Page Nos.

Federal Cases

*American Business Association v. Slater*
231 F. 3d 1 (D.C. Cir. 2000)      18

*Brignoli v. Balch Hardy & Scheinman, Inc.*
735 F.Supp. 100 (S.D.N.Y. 1990)      53

*Brother v. Tiger Partner, LLC*
331 F. Supp. 2d 1368 (M.D. Fla. 2004)      21, 22

*Chambers v. NASCO, Inc.*
501 U.S. 21, 111 S.Ct. 2123 (1991)      53, 54, 55

*Clinton v. United States*
297 F.2d 899 (9th Cir. 1961)      21

*De Long v. Hennessey*
912 F.2d 114 (9th Cir. 1990)      21, 22, 25

*Edwards v. General Motors Corp.*
153 F.3d 242 (5th Cir. 1998)      52

*Federated Department Stores, Inc. v. Moitie*
452 U.S. 394, 101 S.Ct. 2424 (1981)      23

*Fink v. Gomez*
239 F.3d 989 (9th Cir. 2001)      22, 54

*Fox Valley Const. Workers Fringe Benefits Funds v. Pride of the Fox
Masonry v. Expert Restorations*
140 F.3d 661 (7th Cir 1998)      53

*General Signal Corp. v. Donallco, Inc.*
787 F.2d 1376 (9th Cir. 1986)      55

*Hutto v. Finney*
437 U.S. 678, 98 S.Ct. 2565 (1978)      52

GROTTA, GLASS!
& HOFFMAN, P.C.
COUNSELLORS AT LAW
388 MARKET STREET
SAN FRANCISCO, CA 94111

**TABLE OF AUTHORITIES**

Page Nos.

Federal Cases continued

*In re Billy Roy Tyler*
839 F.2d 1290 (8th Cir. 1988)                                    41

*In re Green*
669 F.2d 779 (D.C. Cir 1981)                                     21

*In re Keegan Management Co., Secur. Litig.*
78 F.3d 431 (9th Cir. 1996)                                      52, 53

*In re Powell*
851 F. 2d 427 (D.C. Cir. 1988)                                   25

*Lipsig v. National Student Marketing Corp.*
663 F.2d 178 (D.C. Cir. 1980)                                    54

*Lockary v. Kayfetz*
974 F.2d 1166 (9th Cir. 1992)                                    55

*Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*
50 F.3d 730 (9th Cir. 1995)                                      54

*Moeller v. Taco Bell Corp.*
220 F.R.D. 604 (N.D. Cal. 2004)                                  19

*Molski v. Mandarin Touch Restaurant*
347 F. Supp. 2d 860 (C.D. Cal. 2004)                             5, 9, 20, 21, 22
                                                                 23, 24, 25, 33,
                                                                 39, 40, 41

*Molski v. Mandarin Touch Restaurant*
359 Supp. 2d 924 (C.D. Cal. 2005)                                6, 7, 9, 14, 42,
                                                                 43

*O'Loughlin v. Doe*
920 F.2d 614 (9th Cir. 1990)                                     42

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*
210 F.3d 1112 (9th Cir. 2000)                                    53

GROTTA, GLASS!
& HOFFMAN, P.C.
COUNSELLORS AT LAW
388 MARKET STREET
SAN FRANCISCO, CA 94111

**TABLE OF AUTHORITIES**

Page Nos.

Federal Cases continued

*Pickern v. Pier I Imps.*
339 F. Supp. 2d 1081 (E.D. Ca 2004)     54

*Resolution Trust Corp. v. Dabney*
73 F.3d 262 (10th Cir. 1995)     52, 55

*Roadway Express, Inc. v. Piper*
447 U.S. 752, 100 S.Ct. 2455 (1980)     53, 54

*Rodriguez v. Investco, L.L.C.*
305 F. Supp. 2d 1278 (M.D. Fla. 2004)     20, 21

*Salstrom v. Citicorp Credit Services, Inc.*
74 F. 3d 183 (9th Cir. 1996)     53

*Schwartz v. Million Air, Inc.*
341 F. 3d 1220 (11th Cir. 2003)     52

*Toon v. Wackenhut Corrections Corp.*
250 F.3d 950 (5th Cir. 2001)     55

*Vollmer v. Selden*
350 F. 3d 656 (7th Cir. 2003)     22

*Weissman v. Quail Lodge, Inc.*
179 F.3d 1194 (9th Cir. 1999)     21

*Wood v. Santa Barbara Chamber of Commerce*
705 F.2d 1515 (9th Cir. 1983)     25

Statutes

28 C.F.R. § 36.304 (2004)     18

28 C.F.R. § 36.304(a) (2004)     11

GROTTA, GLASSI
& HOFFMAN, P.C.
COUNSELLORS AT LAW
388 MARKET STREET
San Francisco, CA 94111

| | | |
|---|---|---|
| 28 C.F.R. § 36.304(b) | | 11 |
| 28 U.S.C. § 1927 | | 52, 53, 54 |

# TABLE OF AUTHORITIES

Page Nos.

### Statues continued

| | | |
|---|---|---|
| 28 U.S.C. § 1651(a) | | 21 |
| 42 U.S.C. § 12101(b) | | 18 |
| 42 U.S.C. § 12101(b) (1) | | 56 |
| 42 U.S.C.  § 12182(b) (2) (A) (iv) | | 18 |
| 42 U.S.C.  § 12182(b)(2)(A)(v) | | 18 |
| 42 U.S.C. § 12188 (a) | | 18 |
| 42 U.S.C. § 12188(a)(1) | | 18, 39 |
| 42 U.S.C. § 12188 (b) | | 18 |
| 42 U.S.C. § 12188 (b)(2)(B) | | 18 |
| Americans with Disabilities Act of 1990, Title III | | 4, 18 |
| California Civil Code § 51 | | 18, 19 |
| California Civil Code § 52(a) | | 19 |
| California Civil Code § 54 | | 18 |
| California Civil Code § 54.3(a) | | 19 |

GROTTA, GLASSI
& HOFFMAN, P.C.
COUNSELLORS AT LAW
388 MARKET STREET
San Francisco, CA 94111

vii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Americans with Disabilities Act of 1990 ("ADA") created civil rights protection for individuals with disabilities. The well-intentioned goals of Title III of the ADA are clear: (1) eradicating discrimination on the basis of one's disability, and (2) ensuring that places of public accommodation are, to the maximum extent feasible in accordance with applicable standards, "accessible to and usable by" individuals with disabilities. The laudable spirit and intent of the ADA, however, have been poorly served by the disturbing cottage industry of abusive litigation that has evolved in the wake of the statute's enactment. The catalyst behind the explosion of disability litigation in California has been successive amendments to California's anti-discrimination statutes that have increased damage and strict liability penalty awards, remedies not available under the ADA's private right of action. As a result, opportunistic lawyers and their stable of professional plaintiffs have capitalized on filing "shakedown" lawsuits alleging trivial and negligible access compliance violations under the ADA and state claims designed to coerce a quick monetary settlement. Thomas Frankovich is one such opportunistic lawyer; Ron Wilson is one such professional plaintiff.

Frankovich has already been declared "vexatious" in the Central District of California for orchestrating an ADA lawsuit "extortion scheme." Frankovich has also been very active in the Eastern District, where he has filed 91 ADA lawsuits. Wilson has filed 65 ADA lawsuits in the Eastern District. The two of them have also been known to file cases in state court in which they plead federal causes of action, virtually daring defendants to remove the case to federal court. When viewed in the aggregate, these lawsuits reveal a clear intent to harass businesses and extort quick cash settlements rather than a legitimate effort to obtain appropriate levels of access for

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

genuinely disabled persons. From San Diego to Napa, Wilson and Frankovich have ruthlessly targeted businesses big and small with "drive-by" lawsuits. Once the lawsuits commence, Wilson and Frankovich add insult to injury by routinely engaging in gamesmanship and dilatory tactics that necessarily drive up the cost of litigation. These cases quickly settle once most defendants, facing both their own and Wilson's mounting attorney's fees, understand the name of the game and agree to pay off Wilson and Frankovich.

Here, Frances Murillo and her restaurant in Vacaville were targeted and harassed by Wilson for several years before Frankovich filed a lawsuit in August 2005 alleging that Murillo violated the ADA. It is undisputed that at the time Wilson and Frankovich filed this case, Murillo's Restaurant was in full compliance with state and federal disability access laws. Over the past eight months of litigation, Wilson and Frankovich have unnecessarily increased attorney's fees for both parties through obstructionist tactics in the discovery process. Judicial intervention is necessary to put an end to this self-serving litigation enterprise, and, in doing so, stop the irresponsible waste of judicial resources and the significant needless harassment and expense endured by victimized defendants like Frances Murillo.[1]

## II.   SUMMARY OF ARGUMENT

In *Molski v. Mandarin Touch Restaurant*, 347 F. Supp. 2d 860, 867 (C.D. Cal. 2004) ("*Molski I*"), Judge Edward Rafeedie held that a serial plaintiff, similar to Wilson, who had filed over 400 ADA lawsuits since 1998, and who was also represented by Frankovich, is a "vexatious litigant." Accordingly, before filing any new ADA lawsuit in the Central District, Mr. Molski must file a motion for leave along with a copy of his proposed complaint and a copy of Judge

---

[1] Murillo's Motion for Summary Judgment is filed concurrently herewith.

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

- 5 -

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

Rafeedie's order. *Id.* at 868. By requiring Molski to undertake these additional pre-filing steps, reviewing courts in the Central District can "assess whether the proposed filing is made in good faith, or is simply another attempt to extort a settlement." *Id.*

Judge Rafeedie also found that Thomas Frankovich, Wilson's attorney in this case, conspired with Molski in the ADA "extortion scheme" and declared Frankovich a "vexatious litigator." Pursuant to Judge Rafeedie's order, Frankovich must also obtain a pre-filing order before he can represent <u>any plaintiff</u> who intends to file an ADA lawsuit in the Central District. *Molski v. Mandarin Touch Restaurant*, 359 F. Supp. 2d 924 (C. D. Cal. 2005) ("*Molski II*").

Since approximately January 2000, Frankovich has filed a total of 560 ADA lawsuits in the Federal Courts, **91 of which were filed in the Eastern District**. (*See* Request For Judicial Notice ("RJN"), Exhibits 1 and 2). Frankovich filed 223 ADA lawsuits in 2004 alone, approximately one-third of which targeted small Asian and Mexican restaurants, "perhaps because such establishments are seen as easy prey for coercive claims." *Molski II*, 359 F. Supp. 2d at 926. Apparently undeterred by Judge Rafeedie's order, Frankovich subsequently filed another 19 ADA lawsuits. (*See* RJN, Exhibit 1). He also files similar cases in state courts. (*See* RJN, Exhibits 3(a)-(d)).

Wilson, who admits to having "lost count" of how many ADA lawsuits he has filed in the Federal Courts, is a prolific plaintiff and a client of Frankovich. From approximately January 2000 to February 2006, Wilson (sometimes as a single plaintiff and other times as a co-plaintiff) filed approximately 85 ADA lawsuits in the Federal Courts, **65 of which were filed in the Eastern District**. (*See* RJN, Exhibits 4 and 5). The pleadings in these cases are nearly identical, and always include a claim for "emotional distress." Notably, Wilson has settled and voluntarily dismissed over 98% of these cases. The high percentage of settlements is not, as Wilson will

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

presumably argue, indicative of legitimate access claims alleged in these lawsuits. Rather, the incentive for defendants to settle arises because the cost of litigation increases quickly and needlessly as Wilson and Frankovich routinely prolong and stonewall discovery efforts, engage in gamesmanship with opposing counsel, and propound discovery that is not tailored to the particular claims or defenses at issue in the case. (*See* Declaration of Karen L. Stephenson ("Stephenson Decl."), ¶¶ 3-8, filed herewith).

Far from being self-proclaimed ambassadors leading the fight to eradicate disability discrimination, the singular priority of Wilson and Frankovich is clear: their own financial gain. As Judge Rafeedie recognized in declaring Frankovich "vexatious," a high settlement ratio is indicative both of an aggressive and unethical pursuit of cash settlements and of defendants' inability or unwillingness to expend enormous sums on attorney's fees, court costs and protracted litigation. *See Molski II*, 359 F. Supp. 2d at 934 (high rate of settlements indicates an extortion scheme when combined with "other evidence that Frankovich has aggressively and unethically pursued cash settlements").

Wilson utilizes a well-worn scheme as the set-up for these lawsuits. He poses as a "patron" visiting restaurants, retail stores, banks and other establishments where, unbeknown to the management, he covertly measures and photographs supposed accessibility "barriers" and other "violations." Shortly thereafter, the veiled threat of a lawsuit arrives at the door of the targeted business in a handwritten letter from Wilson demanding modifications to the establishment. Typically, Wilson files a lawsuit even where the business has timely complied with all of his demands. Litigation almost invariably follows notwithstanding good faith efforts by a business to correct the alleged trivial violations.

In August 2005, Wilson and Frankovich added Murillo to the long list of victims they

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

have forced into the legal process. This lawsuit, however, was just the culmination of a long

pattern of harassment of Murillo. For four years before this case was filed, Wilson periodically

"visited" one of Murillo's two restaurants in Vacaville covertly armed with a camera and various

measuring devices for the sole purpose of finding accessibility "violations." (*See* Declaration of

Frances Murillo ("Murillo Decl."), ¶ 3, filed herewith). Those "visits" consistently led to letters

to Murillo "suggesting" that she make certain modifications to the restaurant if she wanted to

avoid litigation. (*Id.*). Without questioning Wilson's demands or his representations regarding

her "barrier" removal obligations, Murillo immediately responded to Wilson's letters and

complied in good faith with each and every demand for modifications. (*Id.* at ¶¶ 3, 4). As it

turns out, many of those modifications were not necessary or legally required under state or

federal law.

     Confirming the adage that "no good deed goes unpunished," Murillo's extraordinary

efforts were rewarded with a lawsuit filed by Frankovich. (Murillo Decl. at ¶ 9; Exhibit 9 to

Murillo Decl.). Undoubtedly, Wilson and Frankovich expected a repeat performance of their

tried and true "sue, settle and move on" routine, but Frances Murillo has had enough. As her

conduct over the past four years readily demonstrates, Murillo unconditionally supports the well-

intentioned goals of disability access laws. Murillo is particularly sensitive and responsive to the

needs of the disabled community because her own husband is disabled, and she enjoys the

patronage of many regular customers with disabilities. (Murillo Decl., ¶ 4). As a result of

Murillo's efforts, both the City of Vacaville and a qualified ADA expert have certified that

Murillo has not only met but exceeded her obligations to comply with state and federal disability

access laws at her restaurant. (Murillo Decl., ¶¶ 6-8; Exhibits 7 and 8 to Murillo Decl.). As a

matter of principle, however, Murillo has chosen to oppose the unscrupulous tactics employed by

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

Wilson and Frankovich. She has refused to enable the continued success of the shakedown tactic, and has refused to pay off Wilson and Frankovich like so many defendants before her.

Here, as in *Molski I* and *Molski II*, pre-filing orders are necessary to shield the Courts in this District and victimized defendants like Murillo from a continuing, systematic pattern of harassment and abuse by yet another professional plaintiff and his vexatious counsel. By requiring the instigators of this unscrupulous litigation scheme to seek leave of court before filing similar complaints in the Eastern District in the future, the Court will be employing the least restrictive measure available to achieve the goal of protecting the public and the judicial system. *Molski II*, 359 F. Supp. 2d at 937. Accordingly, the Court should exercise its inherent power under the All Writs Act to issue pre-filing orders that will protect the judicial system and the public and also preserve judicial resources for legitimately aggrieved individuals who seek relief under the ADA.

## III.  STATEMENT OF FACTS

### A.  Murillo's Mexican Food Restaurant

Frances Murillo is a Mexican immigrant who crossed the border at the age of 16 to pick fruit on farms in Solano County, California. (*See* Murillo Decl., ¶ 2). Murillo became a U.S. citizen, and left the fields in 1970 to start a small restaurant, Murillo's Mexican Food, in downtown Vacaville. (*Id.*). After years of hard work both in the restaurant and at home raising her family, Murillo opened a second Murillo's Mexican Food restaurant located at 1591 East Monte Vista in Vacaville (the "Restaurant"). (*Id.*). The Restaurant, her restaurant, is the subject of this lawsuit.

### B.  Wilson, CARD And A.C.C.E.S.S.

Wilson purports to be a disabled individual. He can walk, but primarily relies on a

wheelchair for ambulation. (*See* Exhibit 2 to Stephenson Decl., Excerpts of Deposition of Ron Wilson ("Wilson Depo.), Volume II, p. 192:3-18). Wilson is a founding member and spokesperson for a group known as "Citizens Acting for the Rights of the Disabled," or "CARD." (*See* Exhibit 1 to Stephenson Decl., Wilson Depo.,Vol. I, p. 17:25-18:7). Wilson claims that CARD has approximately 50 "members," but he apparently recalls the name of only one other member. (*Id.* at pp.16:18-19;18:15-19). According to Wilson, CARD provides a forum for its "members" to exchange information about accessibility "problems." (*Id.* at p. 18:20-23). As the "spokesperson" for CARD, Wilson takes it upon himself to conduct "surveys" of public facilities allegedly in response to CARD members' accessibility "complaints." Wilson visits the public facility, takes some pictures and generates a report that states "what the code says, what – what is wrong, and sometimes a suggestion how to fix it." (*Id.* at pp. 39:3-40:22).

Wilson holds himself out as a "compliance specialist" even though he has not received any specialized training in accessibility compliance or in the application and interpretation of state and federal accessibility regulations. Rather, Wilson claims that mere reading comprehension skills enable him to perform site accessibility "surveys." (*Id.* at p. 38:12-22). These "surveys" typically become exhibits to complaints he files in the Federal Courts.

Wilson also runs a business (or, as Wilson refers to it, "a hobby really") called A.C.C.E.S.S., which stands for "Accessibility Code Coordinator and Evaluation Survey Specialist." (*Id.* at p. 44:1-21). Wilson performs "surveys" for A.C.C.E.S.S. "clients" to identify accessibility "barriers" and "violations." Wilson charges $1.00/minute (plus expenses) for his "specialist" services with A.C.C.E.S.S. (*Id.* at pp. 44:22-45:24). Wilson does not maintain any client files or keep any client records after he is paid. (*Id.* at pp. 47:22-48:8). Wilson's A.C.C.E.S.S. "clients" include Frankovich and other lawyers who file his ADA cases. (*See*

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

Wilson Depo., Vol. II, pp. 161:4-17; 162:10-163:11). Wilson has no other employment. (*Id.* at p. 210:13-17).

## C. **Wilson Poses As An "Expert"**

Wilson is simply not competent to opine on ADA access issues. For example, when conducting his "surveys" and preparing reports of his findings, Wilson does not take into account the all-important original construction date or alterations history of a building or establishment. As a result, Wilson regularly fails to take into account the "readily achievable" standard for modifications to "existing facilities" that pre-date the enactment of the ADA. (*See* Wilson Depo.,Vol. I, pp. 52:13-53:3; 54:21-56:3).

A "readily achievable" modification is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a) (2004). Examples of readily achievable repairs include, among other things, repositioning shelves; rearranging tables, chairs, vending machines and display racks; repositioning telephones; widening doors; and installing accessible door hardware. 28 C.F.R. § 36.304(b). Here, the Restaurant building was originally constructed prior to the mid-1970's, when Murillo purchased the property and began operating the Restaurant. (Murillo Decl., ¶ 2). As such, the Restaurant is an "existing facility" and, therefore, subject to the "readily achievable" standard. Nevertheless, as a result of Wilson's demands, the Restaurant now has three power-assisted entrance doors, none of which were legally required. (*Id.* at ¶ 4). This modification alone cost Murillo approximately $10,000. (*Id.*). In addition, although Wilson is not visually disabled (*i.e.*, blind or nearly blind), Murillo complied with his demands to install Braille accessibility signage at the Restaurant. (*Id.*; Exhibits 1, 2 and 5 to Murillo Decl.). Ultimately, Wilson's demands caused Murillo to spend in excess of $130,000 on accessibility modifications to the Restaurant, most of which were not

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

legally required.  (*Id.* at ¶ 4).

Kim Blackseth is a consultant and expert on federal, state and local disability access issues who works for both plaintiffs and defendants in ADA cases.  (*See* Declaration of Kim Blackseth ("Blackseth Decl."), ¶¶ 2, 6, 7).  Blackseth contends that Wilson has a very limited understanding of important issues affecting the interpretation and application of federal and state disability access requirements.  (*Id.* at ¶11).  These include, among other things, the vital differences between scoping and technical requirements; how initial construction and alterations history of a facility necessarily impact the proper application of state and federal code requirements; and the proper application of the Division of State Architect/Access Compliance policies (which apply only to publicly-funded facilities) to privately-owned facilities.  (*Id.*).  Blackseth's conclusions are based on work he has performed as a retained expert on behalf of Wilson, and in reviewing Wilson's accessibility complaints and reports while working for defendants opposing Wilson in litigation.  (*Id.* at ¶ 12).

In or about late 1999 or early 2000, Blackseth agreed to work as an expert on cases filed by Wilson provided that Wilson would not challenge Blackseth's opinions and interpretations of state and federal disability access requirements.  (*Id.* at ¶ 8).  Wilson initially agreed to the terms of Blackseth's services.  (*Id.* at ¶ 9).  After working on several cases, however, Wilson requested that Blackseth amend his opinions and interpretations of applicable laws to seek additional compliance concessions from defendants in litigation.  (*Id.*).  Blackseth was uncomfortable with Wilson's requests and ultimately determined that his credibility as an expert would be adversely affected if he continued to represent Wilson.  (*Id.*).  Blackseth terminated his professional relationship with Wilson in or around early 2001.  (*Id.*).

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

### D. Wilson's Litigation History

Wilson resides in Dixon, California, and purports to be under "strict orders" from his doctor to restrict how far and how often he travels. (*See* Wilson Depo., Vol. I, pp. 7:4-7; 80:2-81:14; *see also* Exhibit 3 to Stephenson Decl.) He invokes these "restrictions" whenever he is required to give deposition testimony. Geography and purported travel restrictions aside, however, from approximately January 2000 to February 2006 Wilson filed 85 ADA lawsuits in the Federal Courts arising from his alleged visits to businesses as far south as San Diego and as far north as Napa. (*See* RJN, Exhibits 4, 6-32). Of those 85 lawsuits, **65 were filed in the Eastern District**. (*See* RJN, Exhibit 5).

Wilson's court filings are nearly identical in the facts alleged, the claims presented and the relief requested. In virtually every complaint, Wilson alleges that he encountered ramps in the parking areas serving a business establishment that posed "barriers" and "hazards" to Wilson when exiting and re-entering his vehicle. Then, almost uniformly, Wilson alleges difficulty maneuvering exterior paths of travel, often citing ramps that are too steep and signage that is mounted improperly (too high or too low) or missing certain language or Braille characters. After entering a business establishment, Wilson generally complains about a lack of accessible seating and almost always alleges a visit to the restroom, which invariably has at least one violation. Wilson almost always suffers some injury to himself or his wheelchair from allegedly excessive door pressure when entering or exiting the restroom or from lack of sufficient clear floor space in the accessible stall. (*See* RJN, Exhibit 6, ¶¶ 19, 21, 24, 26; Exhibit 7, ¶¶ 19, 21, 24, 26; Exhibit 9, ¶¶ 20, 21, 26, 60, 68, 79; Exhibit 10, ¶¶ 19-23, 26, 28-31; Exhibit 11, ¶¶ 3, 13; Exhibit 12, ¶¶ 3, 13; Exhibit 14, ¶¶ 19, 22, 24, 40; Exhibit 15, ¶¶ 19, 21, 24).

Wilson also regularly complains of suffering a "loss of his civil rights," humiliation,

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

emotional distress and mental anguish from the experience. (One would think that after 85 such nearly identical "incidents," the "mental anguish" in it all would have subsided a bit). (*See* RJN, Exhibit 6, ¶¶ 24, 26, 27; Exhibit 7, ¶¶ 24, 26, 27; Exhibit 9, ¶¶ 24, 25, 60; Exhibit 10, ¶¶ 28, 64, 72; Exhibit 11, ¶¶ 13, 15, 16; Exhibit 12, ¶¶ 13, 15, 16; Exhibit 14, ¶¶ 22, 24, 25, 91; Exhibit 15, ¶¶ 22, 24, 26, 27, 93, 96. Wilson's prayers for relief invariably include a request for injunctive relief, statutory damages, punitive damages and attorney's fees. (*See* RJN, Exhibit 6, page 16; Exhibit 7, page 16; Exhibit 9, ¶¶ 29, 31, 32, 35, 36, 38, 51, 52, 57, 62, 70-72, pp. 29-32; Exhibit 10, ¶¶ 33, 35, 36, 39, 40, 42, 55-56, 61, pp. 29-33; Exhibit 11, pp. 12-13; Exhibit 12, pp. 10-11; Exhibit 14, ¶¶ 2, 45, 55-58, 67-69, 77-80, 95, pp. 16-17; Exhibit 15, ¶¶ 2, 47, 48, 49, 57-60, 69-71, 79-81, 88, 97, p. 16).

Wilson's ADA cases almost invariably end in settlement. In fact, only one of his cases was litigated on the merits, and that case resulted in a defense verdict. (*See* Wilson Depo., Vol. II, pp. 121:22-122:24; 124:25-125:3).

**E.      Thomas E. Frankovich**

Since approximately January 2000, Frankovich has filed 560 ADA lawsuits in the Federal Courts, **91 of which were filed in the Eastern District**. *See* RJN, Exhibits 1 and 2. Frankovich filed 223 ADA lawsuits in 2004 alone, approximately one-third of which targeted small ethnic restaurants. *See Molski II*, 359 F. Supp. 2d at 926. In *Molski II*, the court noted that "other than superficial alteration of the facts and names, the [223] complaints [that were reviewed] are textually identical, often down to the typos." 359 F. Supp. 2d at 926. Among the striking similarities in the pleadings:

- The complaints typically allege the same five causes of action: a federal ADA claim, violation of the Unruh Act, violation of the DPA, violation of Business and

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

Professions Code § 17200, and violation of Health and Safety Code § 19955;

- The damages requested are identical;

- In each and every complaint, Frankovich's clients claim to suffer a bodily injury as a result of encountering an architectural barrier. For example, in 178 of the 223 cases (80%), the plaintiff claims an injury to his or her upper extremities; and

- It is common for Frankovich's clients to make multiple claims for injuries purportedly sustained on the same day.

*Id.* at 926-927. *See also* RJN, Exhibit 8, p. 1, ¶¶ 28, 30, 31, 35; Exhibit 9, p. 1, ¶¶ 24, 25, 29; Exhibit 10, p. 1, ¶¶ 20, 26, 28, 29, 33; Exhibit 33, p. 1, ¶¶ 21, 28, 33; Exhibit 34, p. 1, ¶¶ 21, 26, 27, 31; Exhibit 35, p. 1, ¶¶ 21, 26, 27, 31; Exhibit 36, p. 1, ¶¶ 22, 29, 30, 34).

In *Molski II*, Frankovich was labeled a "vexatious litigator" because of his duplicity with a serial plaintiff such as Wilson in an ADA "extortion scheme." Frankovich's vexatious conduct included, among other things, "making questionable allegations of physical injury, pursuing excessive compensatory damages, and securing quick settlements." *Id.* at 929. Pursuant to Judge Rafeedie's order, Frankovich must obtain a pre-filing order before he can represent any plaintiff who intends to file an ADA action in the Central District. *Id.* at 934. Undeterred by the *Molski II* order, Frankovich subsequently filed 19 ADA lawsuits in other federal districts. (*See* RJN, Exhibit 2). He also files cases in state courts alleging federal ADA claims. (*See* RJN, Exhibits 3(a)-(d)).

F. **Wilson's Assault On Murillo**

Over the past four years, Wilson has visited the Restaurant on a few occasions. (Murillo Decl. at ¶ 3). Wilson is not a "regular" customer at the Restaurant. (*Id.*). In the Complaint, Wilson alleges that his visits to the Restaurant were simply social outings when he enjoyed beer

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

and chips like any other patron. (*See* Exhibit 9 to Murillo Decl., Complaint ¶¶ 16, 21, 27). The evidence, however, suggests that Wilson's appearances at the Restaurant were really a fishing expedition for ADA violations.

Wilson almost always carries a black case that contains, among other things, a camera, various tape measures, a pressure gauge, stopwatch and door stop. (*See* Exhibit 12 to Stephenson Decl., Excerpts of Deposition of Ron Wilson, *Wilson v. Costco Wholesale Corporation*, Case No. 05CV12220 WQH, pp. 191:24-192:2, 9-13, 23-193:5). Wilson admits that he has taken measurements and photographs of the Restaurant (although he claims he does not recall how many times) in order to collect information about alleged "violations." (*See* Wilson Depo., Vol. I, p. 67:7-24; 76:16-77:25, 93:14-21). Following each of his visits to the Restaurant, Wilson sent handwritten letters to Murillo identifying "barriers" that he purportedly encountered and requesting a prompt response detailing how the "barriers" would be removed. (*See* Murillo Decl., ¶ 3; Exhibits 1 and 2 to Murillo Decl.). Murillo promptly responded to each of the letters. (Murillo Decl., ¶ 3; Exhibits 3 and 4 to Murillo Decl.). Wilson does not dispute this fact. (*See* Wilson Depo., Vol. I, pp. 74:18-75:7).

Relying on Wilson's representations in his letters to Murillo regarding the nature and extent of alleged "barriers" and "violations" in the Restaurant, Murillo ultimately spent in excess of $130,000 in an attempt to ensure that Wilson was satisfied that the Restaurant complied with applicable law. (Murillo Decl., ¶ 4). Among other modifications, Murillo installed entrances ramps with detectable warning surfaces, Braille accessibility signage, a lowered bar section, accessible tables, automatic sensors for the faucets and paper towel dispensers in the men's and women's restrooms, and twice repaved and re-striped the concrete in the parking lot. (*Id.*). Most notably, she installed three power-assisted doors at all public entrances to the restaurant. (*Id.*).

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

The doors alone cost approximately $30,000 and were not legally required. (*Id.*).

On March 14, 2005, Wilson lodged a complaint with the City of Vacaville alleging that the Restaurant failed to comply with certain state accessibility code provisions. (*See* Exhibit 5 to Murillo Decl.). The City's accessibility complaint procedure requires the City to notify the business of the alleged "violations." If the business cures the alleged code deviations within 90 days, the business cannot be liable for any civil penalty. Of the 19 alleged "violations" in Wilson's complaint, only a few were confirmed as valid code deviations by the City. (*See* Murillo Decl., ¶ 5, Exhibit 5 to Murillo Decl.). Murillo quickly addressed the few bona fide issues in that complaint. (Murillo Decl., ¶ 5). The City subsequently advised Wilson and Murillo that the Restaurant is in full compliance with Title 24. (*See* Murillo Decl., ¶ 8, Exhibit 8 to Murillo Decl.).

Tim Fallis, an ADA expert consultant and owner of Human Adaption, LLC, also surveyed the Restaurant in March 2005, and determined that it not only meets but **exceeds** applicable state and federal compliance standards. (*See* Murillo Decl., ¶ 6, Exhibit 6 to Murillo Decl.; Declaration of Tim Fallis ("Fallis Decl."), ¶ 7, filed herewith, and Exhibit "B" to Fallis Decl.).

Wilson does not dispute that the Restaurant complies with the ADA and Title 24; he has not returned to the Restaurant since March 11, 2005. (*See* Wilson Depo., Vol. I, pp. 81:15-20; 82:8-12; Vol. II, p. 146:21-23). Nevertheless, on August 3, 2005 Wilson and Frankovich filed this action against Murillo falsely alleging the continued existence of ADA violations at the Restaurant. (*See* Exhibit 9 to Murillo Decl., ¶¶ 7, 38, 39, 40, 42, 48, 49, 50, 51, 62, 65 and Prayer). Wilson abandoned those claims at his deposition. (*See* Wilson Depo., Vol. I, pp. 58:11-23; 61:15-62:13).

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

# IV.  ARGUMENT

## A.  The Abuse Of Federal And State Disability Access Statutes

### 1.  The Americans With Disabilities Act of 1990

The ADA, codified at 42 U.S.C. § 12101, *et seq.*, was signed into law in 1990.  Its stated goal is to remedy discrimination against individuals with disabilities.  42 U.S.C. § 12101(b).  To that end, Title III of the ADA requires the removal of structural barriers in <u>existing</u> public accommodations "where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv). *See also* 28 C.F.R. § 36.304 (2004) (listing examples of, and prioritizing, readily achievable alterations).  Where removal of the barrier is not readily achievable, the facility must provide access "through alternative methods if such methods are readily achievable."  42 U.S.C. § 12182(b)(2)(A)(v).

To enforce Title III, the ADA contains both a private right of action and a right of action for the Attorney General.  42 U.S.C. §§ 12188(a), (b).  While the Attorney General may seek monetary damages on behalf of an aggrieved party, the only remedies available under the private right of action are injunctive relief and recovery of attorney's fees.  42 U.S.C. §§ 12188(a)(1), (b)(2)(B); 42 U.S.C. § 2000a-3(a).  By providing different remedies for public and private enforcement, Congress clearly demonstrated its intent to prevent private plaintiffs from recovering money damages under the ADA.  *American Bus Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000) ("By specifying the circumstances under which monetary relief will be available, Congress evinced its intent that damages would be available in no others.")

### 2.  The Unruh Act and The Disabled Persons Act

California Civil Code sections 51 ("Unruh Act") and 54 (the Disabled Persons Act or "DPA") prohibit discrimination against people with disabilities and provide for "full and equal

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

access" by individuals with disabilities of places of public accommodation and public facilities.

A violation of the right of any individual under the ADA is also violation of the Unruh Act and DPA. *See* Civ. Code §§ 51, 54(c). Civil Code section 54.3 states that any individual who denies or interferes with a disabled person's rights of access to a place of public accommodation or public facility can be liable for actual damages and attorney's fees. *See* Civ. Code § 54.3(a).

In 2001, AB 587 increased the minimum damage amount under the Unruh Act from $1,000 to $4,000. *See* Civ. Code § 52(a). State legislators were told that the bill would increase the penalty for "hate crimes and discrimination crimes." There was no mention of using AB 587 to improve building standards for access by individuals with disabilities. *See* Exhibit 8 to Stephenson Decl.). Nevertheless, Wilson and Frankovich regularly invoke this damage provision.

Enterprising plaintiffs and their attorneys have, thus, found a way to circumvent the will of Congress by seeking money damages while also invoking federal law. Because a violation of the ADA also constitutes a violation of the Unruh Act and the DPA, plaintiffs sue in federal court for injunctive relief under the ADA (or in state court, inviting removal), and bootstrap state law claims for money damages and attorney's fees as a "prevailing plaintiff" under the Unruh Act and DPA. *See, e.g., Moeller v. Taco Bell. Corp.*, 220 F.R.D. 604, 607 (N.D. Cal. 2004).

### 3. The "Cottage Industry" of ADA Plaintiffs

The sheer number of ADA cases filed in the Courts is staggering. In 2003 and 2004, more than 2,000 ADA lawsuits were filed in the four federal districts in California. In 2005, that number increased to more than 2,200. Overall, from 1992 to June 2005, over 14,000 ADA lawsuits have been filed in the Courts. The majority of the ADA cases filed in the Courts have been brought by a relatively small number of plaintiffs (including Wilson), using an even smaller

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

number of attorneys (including Frankovich) who "specialize" in these claims. *See* Exhibit 9 to Stephenson Decl.).

Unnecessary ADA lawsuits have had a huge impact on California businesses. The typical "drive-by" lawsuit involves an initial demand from the plaintiff's counsel of at least $25,000. The average cost of improvements to the facility made in response to a claim is less than $4,000. The typical lawsuit costs more than $5,000 to defend. The plaintiffs and their counsel are rarely willing to settle their claims for damages and attorney's fees and costs for less than $12,000. Multiplying the estimated cost of the typical lawsuit by the estimated number of claims filed in each of the last three years in the Federal Courts, the estimated cost of these suits to California businesses is $34 million each year ($5,000 for cost of defense + $12,000 for plaintiff's damages and attorney's fees/costs x 2,000 annual cases filed = $34 million). *See* Amicus Curiae Brief filed in the Ninth Circuit Court of Appeals, *Jerry Doran v. Del Taco, Inc.*, Docket No. 05-55942, pp. 10-11, Exhibit 10 to Stephenson Decl..

The current ADA lawsuit binge is driven by economics. The ability to profit from ADA litigation has given birth to what one court has described as "a cottage industry." *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1280-81 (M.D. Fla. 2004). Recently, Judge Rafeedie accurately summarized the "sue, settle and move on" modus operandi of the ADA plaintiffs' bar:

> The scheme is simple: an unscrupulous law firm [Frankovich] sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA. Then, rather than simply informing a business of the violations, and attempting to remedy the matter through "conciliation and voluntary compliance," a lawsuit is filed, requesting damage awards that would put many of the targeted establishments out of business. Faced with the specter of costly litigation, most businesses quickly settle the matter.

*Molski I, supra*, 347 F.Supp. at 868.

The result of this scheme is that "the means for enforcing the ADA (attorney's fees) have

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

become more important and desirable than the end (accessibility for disabled individuals)."

*Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M. D. Fla. 2004). Serial plaintiffs, like Wilson, serve as "professional pawn[s] in an ongoing scheme to bilk attorney's fees." *Rodriguez, supra*, 305 F. Supp. 2d at 1285. It is a "type of shotgun litigation [that] undermines both the spirit and purpose of the ADA." *Brother, supra*, 331 F. Supp. 2d at 1375.

**B.**     **The Court Has Authority To Issue Pre-Filing Orders Against Plaintiff Wilson And Attorney Frankovich**

The right to seek justice through the judicial system is neither absolute nor unconditional. *In re Green*, 669 F.2d 779, 785 (D.C. Cir. 1981). District courts are empowered, by a variety of sources, with authority to issue an order deeming litigants "vexatious" and requiring them to obtain leave of court before filing a new action. First, this Court has the inherent power to levy sanctions in response to abusive litigation practices. *See, e.g., Molski I*, 347 F. Supp. 2d at 863. "There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). Congress codified this authority to curtail vexatious litigation in the All Writs Act, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. 28 U.S.C. § 1651(a). The All Writs Act vests federal courts with the discretion to enjoin certain litigants from engaging in wasteful litigation. *Clinton v. United States*, 297 F.2d 899, 901 (9th Cir. 1961). Under the All Writs Act, district courts "have the inherent power to file restrictive pre-filing orders against vexatious litigants with abusive and lengthy histories of litigation." *Weissman v. Quail Lodge, Inc.*, 179 F. 3d 1194, 1197 (9th Cir. 1999). Courts may exercise their discretion to

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

"sanction willful or reckless conduct when combined with either frivolousness, harassment or improper purpose"). *Fink v. Gomez*, 239 F. 3d 989 (9th Cir. 2001).

For purposes of this motion, the Court need not find "that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of [sanctions]." *Gomez, supra*, 239 F. 3d at 992. *See also Vollmer v. Selden*, 350 F. 3d 656, 660 (7th Cir. 2003) (a non-frivolous filing may be sanctionable if filed for an improper purpose, such as extortion). Hence, the court in *Molski I* found that "even if the businesses sued by Molski were in violation of the ADA, this fact is outweighed by the Court's finding that he acted in bad faith, for the improper purpose of extorting a settlement." 347 F. Supp. 2d at 865; *see also Brother, supra*, 331 F. Supp. 2d at 1375 (describing a similar pattern of "shotgun" ADA litigation, designed to extort attorney's fees, as "vexatious litigation").

In the Ninth Circuit, before declaring a litigant vexatious district courts must: (1) provide a plaintiff with an opportunity to oppose entry of the order; (2) must indicate what court filings support issuance of the order; (3) must find that the filings were frivolous or harassing; and (4) the order must be narrowly tailored. *De Long, supra*, 912 F. 2d at 1147-1149.

The only effective way to put a reviewing judge on notice of Wilson's and Frankovich's vexatious histories is to require Wilson and Frankovich to file copies of the vexatious litigant orders from this Court with every new ADA complaint they seek to file in this District and with every case removed to this District that includes ADA allegations. This would allow the reviewing judge to assess whether Wilson and Frankovich (or either of them if they file independently) have raised a bona fide claim of discrimination under the ADA, or whether they were merely bringing another vexatious claim in order to "strong arm" a business into settling.

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

If a District Court determines that no bona fide ADA claim exists in cases filed in or removed to the Eastern District, the case will be dismissed with prejudice. The dismissal will be accorded *res judicata* preclusive effect. *Res judicata* treatment serves the established public policy favoring finality of judgments and acknowledges that a District Court's assessment of a proposed complaint is an exercise of judicial power that is entitled to appropriate respect. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 401-402, 101 S.Ct. 2424 (1981). *See also Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853 (1946) ("There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*'").

Moreover, insofar as Wilson and Frankovich also file cases in state courts alleging ADA claims, state filings that are removed to the Eastern District must be treated as if they originated in the Eastern District. That is, immediately following removal, Wilson and Frankovich (or either of them if they file independently) must bring the pre-filing order(s) and the proposed complaint to the court's attention. As a practical matter, unless cases removed to the Eastern District are accorded the same treatment as cases originating in the Eastern District, Wilson and Frankovich will accomplish an "end run" around the Court's pre-filing orders by filing their vexatious ADA cases in the state courts.

## C. Wilson Satisfies The Standard For A Vexatious Litigant

When determining whether to require a plaintiff to obtain leave of court before commencing litigation, the Court must determine "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Molski I*, 347 F. Supp. 2d at 863-864. The Court must look at five factors: (1) the plaintiff's history of litigation and in particular whether it entailed vexatious, harassing or duplicative

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

lawsuits; (2) the plaintiff's motive in pursuing the litigation, *i.e.*, does the litigant have an objective good faith expectation of prevailing; (3) whether the plaintiff is represented by counsel; (4) whether the plaintiff has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Id.* at 864. Application of these factors establishes that Wilson is a vexatious litigant. Therefore, the Court should require Wilson to obtain a pre-filing order before he is permitted access to file any ADA action in the Eastern District.

### 1. Wilson Has A History Of Vexatious Litigation

A "vexatious suit" is a "lawsuit instituted maliciously and without good cause." Black's Law Dictionary 1596 (8th ed. 2004). Malicious intent and lack of good cause will be found where lawsuits are filed "as part of a scheme of systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements." *Molski I*, 347 F. Supp. 2d at 864. As part of its analysis, the Court should consider (a) the number of lawsuits filed by the plaintiff, (b) the textual and factual similarity of the complaints, and (c) the credibility of the allegations in the complaints. *Id.* These factors clearly establish that Wilson is a vexatious litigant.

Wilson has been accused of being "vexatious" in another case in the Eastern District. In *Wilson v. Pier 1 Imports, Inc.,* USDC Case No. CIV S-04-633 LKK/CMK, the defendant sought an order declaring Wilson and his attorney declared vexatious litigants. In that case, Judge Karlton determined that Pier 1 failed to establish that the facility in question complied with the ADA. Judge Karlton thus found that Pier 1 lacked standing to bring the motion. The standing issue alone was a "defect [that] appears to suffice to deny the motion." Wilson therefore narrowly avoided being declared vexatious. Here, the evidence before the Court demonstrates

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

that Murillo does have standing to bring the motion. She not only met but exceeded her compliance obligations and that the Restaurant complies with the ADA. (*See* Murillo Decl., ¶¶ 6, 8, Exhibits 6 and 8 to Murillo Decl.; Fallis Decl., ¶ 7).

### a. The Volume of Lawsuits

The sheer volume of ADA lawsuits filed by Wilson supports a finding of malicious intent. Extreme litigiousness can be indicative of intent to harass. *See De Long, supra*, 912 F. 2d at 1147 (in order to issue a pre-filing order, "[a]t the least, the record needs to show, in some manner, that the litigant's activities were numerous or abusive"); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F. 2d 1515, 1524 (9th Cir. 1983) (plaintiff found to be a vexatious litigator based on filing of 35 lawsuits; lower court properly enjoined the plaintiff from filing additional suits). Since approximately January 2000, Wilson has filed 85 ADA lawsuits in the Federal Courts. (*See* RJN, Exhibit 4). Of those 85 lawsuits, **65 have been filed in the Eastern District**. (*Id.* at Exhibit 5). Eleven nearly identical cases were filed in his Courtroom. Only one of Wilson's 85 lawsuits has been litigated on the merits, the result of which was a defense verdict. (*See* Wilson Depo., Vol. II, pp. 121:22-122:24; 124:25-125:3). The remaining 84 cases resulted in settlements. Wilson's filings are plainly numerous and abusive as well.

### b. Textual and Factual Similarity of Pleadings

"The district court should attempt to discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court." *In re Powell*, 851 F. 2d 427, 431 (D. C. Cir. 1988); *see also Molski I*, 347 F.Supp. 2d at 864 (textual and factual similarity of complaints suggests that the plaintiff is filing boilerplate complaints). The following comparison of three different Wilson ADA complaints demonstrates the textual and factual similarity (if not identity) of the facts alleged, claims presented and relief requested.

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

- 25 -

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

**(1)** **Identical Complaints In The Eastern District**

The following is a comparison of four ADA cases filed by Wilson in the Eastern District. Notably, two of the cases – *Wilson v. Staples The Office Superstore*, Inc. and *Wilson v. CJK Associates, LLC dba Applebees* – were filed on the exact same day (February 26, 2004).



GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

**DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS**

| *Wilson v. Staples The Office Superstore, et al.,*USDC Case No. CIV.S-04-0394 FCD GGH | *Wilson v. CJK Associates, LLC dba Applebees, et al.,* USDC Case No. CIV.S-04-0395 WBS GGH | *Wilson v. Wal-Mart Stores, Inc. dba Sam's Club, et al.,* USDC Case No. CIV.S-04-0801 FCD KJM | *Wilson v. Macd-Cordelia Jct., Inc. dba McDonald's, et al.,* USDC Case No. CIV.S-04-1220 MCE DAD |
|---|---|---|---|
| Paragraph 2: "Wilson seeks compensatory and punitive damages, injunctive and declaratory relief, attorney fees and costs, . . pursuant to:<br><br>the Americans With Disabilities Act of 1990;<br><br>Health and Safety Code Part 5.5;<br><br>The Unruh Act;<br><br>The Disabled Persons Act;<br><br>The Unfair Business Practices Act; and<br><br>Negligence." | Paragraph 2: "Wilson seeks compensatory and punitive damages, injunctive and declaratory relief, attorney fees and costs, . . pursuant to:<br><br>the Americans With Disabilities Act of 1990;<br><br>Health and Safety Code Part 5.5;<br><br>The Unruh Act;<br><br>The Disabled Persons Act;<br><br>The Unfair Business Practices Act; and<br><br>Negligence." | Paragraph 2: "Wilson seeks compensatory and punitive damages, injunctive and declaratory relief, attorney fees and costs, . . pursuant to:<br><br>the Americans With Disabilities Act of 1990;<br><br>Health and Safety Code Part 5.5;<br><br>The Unruh Act;<br><br>The Disabled Persons Act;<br><br>The Unfair Business Practices Act; and<br><br>Negligence." | Paragraph 2: "Wilson seeks compensatory and punitive damages, injunctive and declaratory relief, attorney fees and costs, . . pursuant to:<br><br>the Americans With Disabilities Act of 1990;<br><br>Health and Safety Code Part 5.5;<br><br>The Unruh Act;<br><br>The Disabled Persons Act;<br><br>The Unfair Business Practices Act; and<br><br>Negligence." |
| Paragraph 18: "Wilson visited … and actually encountered architectural barriers that denied him full and equal | Paragraph 18: "Wilson visited … and actually encountered architectural barriers that denied him full and equal | Paragraph 18: "Wilson visited … and actually encountered architectural barriers that denied him full and equal | Paragraph 18: "Wilson visited … and actually encountered architectural barriers that denied him full and equal |

GROTTA, GLASSMAN & HOFFMAN, P.C.<br>388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| access." | access." | access." | access." |
|---|---|---|---|
| Paragraph 23: "Despite these visits, Wilson was also deterred from visiting . . . because of actual knowledge that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations . . . was not available to physically disabled persons." | Paragraph 23: "Despite these visits, Wilson was also deterred from visiting . . . because of actual knowledge that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations . . . was not available to physically disabled persons." | Paragraph 21: "Despite these visits, Wilson was also deterred from visiting . . . because of actual knowledge that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations . . . was not available to physically disabled persons." | Paragraph 21: "Despite these visits, Wilson was also deterred from visiting . . . because of actual knowledge that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations . . . was not available to physically disabled persons." |
| Paragraph 24: "Wilson has suffered, or anticipates suffering, emotional and physical harm during each actual visit . . . or incident of deterrence." | Paragraph 24: "Wilson has suffered, or anticipates suffering, emotional and physical harm during each actual visit . . . or incident of deterrence." | Paragraph 22: "Wilson has suffered, or anticipates suffering, emotional and physical harm during each actual visit . . . or incident of deterrence." | Paragraph 22: "Wilson has suffered, or anticipates suffering, emotional and physical harm during each actual visit . . . or incident of deterrence." |
| Paragraph 25: "Wilson would visit . . . but for the future threat of discrimination." | Paragraph 25: "Wilson would visit . . . but for the future threat of discrimination." | Paragraph 23: "Wilson would visit . . . but for the future threat of discrimination." | Paragraph 23: "Wilson would visit . . . but for the future threat of discrimination." |
| Paragraph 26: "Because of [the defendants'] acts and omissions, Wilson suffered physical discomfort and injury, emotional | Paragraph 26: "Because of [the defendants'] acts and omissions, Wilson suffered physical discomfort and injury, emotional | Paragraph 24: "Because of [the defendants'] acts and omissions, Wilson suffered physical discomfort and injury, emotional | Paragraph 24: "Because of [the defendants'] acts and omissions, Wilson suffered physical discomfort and injury, emotional |

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| | | | |
|---|---|---|---|
| distress, and mental suffering and distress." | distress, and mental suffering and distress." | distress, and mental suffering and distress." | distress, and mental suffering and distress." |
| Paragraph 27: "All injuries suffered by Wilson are expectedly and naturally associated with the denial of equal access . . . due to [the defendants'] acts and omissions." | Paragraph 27: "All injuries suffered by Wilson are expectedly and naturally associated with the denial of equal access . . . due to [the defendants'] acts and omissions." | Paragraph 25: "All injuries suffered by Wilson are expectedly and naturally associated with the denial of equal access . . . due to [the defendants'] acts and omissions." | Paragraph 25: "All injuries suffered by Wilson are expectedly and naturally associated with the denial of equal access . . . due to [the defendants'] acts and omissions." |
| "PRAYER FOR RELIEF<br><br>Wherefore, Wilson prays for relief against [the defendant] for:<br><br>1. Injunctive relief, preventative relief, or any other relief the Court deems proper under:<br>• 42 U.S.C. § 12205;<br>• California Civil Code §52;<br>• California Civil Code § 55; and<br>• California Health and Safety Code § 19953;<br>2. Declaratory | "PRAYER FOR RELIEF<br><br>Wherefore, Wilson prays for relief against [the defendant] for:<br><br>1. Injunctive relief, preventative relief, or any other relief the Court deems proper under:<br>• 42 U.S.C. § 12205;<br>• California Civil Code §52;<br>• California Civil Code § 55; and<br>• California Health and Safety Code § 19953;<br>2. Declaratory | "PRAYER FOR RELIEF<br><br>Wherefore, Wilson prays for relief against [the defendant] for:<br><br>1. Injunctive relief, preventative relief, or any other relief the Court deems proper under:<br>• 42 U.S.C. § 12205;<br>• California Civil Code §52;<br>• California Civil Code § 55; and<br>• California Health and Safety Code § 19953;<br>2. Declaratory | "PRAYER FOR RELIEF<br><br>Wherefore, Wilson prays for relief against [the defendant] for:<br><br>1. Injunctive relief, preventative relief, or any other relief the Court deems proper under:<br>• 42 U.S.C. § 12205;<br>• California Civil Code §52;<br>• California Civil Code § 55; and<br>• California Health and Safety Code § 19953;<br>2. Declaratory |

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| | | | |
|---|---|---|---|
| relief that [defendant] violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages; | relief that [defendant] violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages; | relief that [defendant] violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages; | relief that [defendant] violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages; |
| 3. Statutory minimum damages under either California Civil Code § 52(a) or California Civil Code § 54.3(a), . . . for each actual visit or incident of deterrence; | 3. Statutory minimum damages under either California Civil Code § 52(a) or California Civil Code § 54.3(a), . . . for each actual visit or incident of deterrence; | 3. Statutory minimum damages under either California Civil Code § 52(a) or California Civil Code § 54.3(a), . . . for each actual visit or incident of deterrence; | 3. Statutory minimum damages under either California Civil Code § 52(a) or California Civil Code § 54.3(a), . . . for each actual visit or incident of deterrence; |
| 4. General and special damages in the amount of $100,000.00; | 4. General and special damages in the amount of $100,000.00; | 4. General and special damages in the amount of $100,000.00; | 4. General and special damages in the amount of $100,000.00; |
| 5. For attorneys' fees, litigation expenses and costs of suit pursuant to:<br>• 42 U.S.C. § 12205;<br>• California Civil Code § 52;<br>• California Civil Code § 54.3;<br>• California Civil Code § 55;<br>• California Code of Civil Procedure | 5. For attorneys' fees, litigation expenses and costs of suit pursuant to:<br>• 42 U.S.C. § 12205;<br>• California Civil Code § 52;<br>• California Civil Code § 54.3;<br>• California Civil Code § 55;<br>• California Code of Civil Procedure | 5. For attorneys' fees, litigation expenses and costs of suit pursuant to:<br>• 42 U.S.C. § 12205;<br>• California Civil Code § 52;<br>• California Civil Code § 54.3;<br>• California Civil Code § 55;<br>• California Code of Civil Procedure | 5. For attorneys' fees, litigation expenses and costs of suit pursuant to:<br>• 42 U.S.C. § 12205;<br>• California Civil Code § 52;<br>• California Civil Code § 54.3;<br>• California Civil Code § 55;<br>• California Code of Civil Procedure |

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| §1021.5; and | §1021.5; and | §1021.5; and | §1021.5; and |
|---|---|---|---|
| • California Health and Safety Code § 19953; | • California Health and Safety Code § 19953; | • California Health and Safety Code § 19953; | • California Health and Safety Code § 19953; |
| 6. Interest at the legal rate from the date of the filing of this action; | 6. Interest at the legal rate from the date of the filing of this action; | 6. Interest at the legal rate from the date of the filing of this action; | 6. Interest at the legal rate from the date of the filing of this action; |
| 7. Punitive damages pursuant to Civil Code § 3294; | 7. Punitive damages pursuant to Civil Code § 3294; | 7. Punitive damages pursuant to Civil Code § 3294; | 7. Punitive damages pursuant to Civil Code § 3294; |
| 8. Prejudgment interest pursuant to Civil Code § 3291" | 8. Prejudgment interest pursuant to Civil Code § 3291" | 8. Prejudgment interest pursuant to Civil Code § 3291" | 8. Prejudgment interest pursuant to Civil Code § 3291" |

(*See* RJN, Exhibits 13, 15, 16 and 25).

### (2)  Wilson Has Filed Similar Cases In This Courtroom

Prior to this case, Wilson has filed 11 cases in this Courtroom alleging violations of the ADA. Those case names and the dates Wilson filed his complaints are listed below:

- *Wilson, et al. v. Schroeder, et al.*, Case No. 2:00-cv-01395; filed 06/27/00

- *Wilson v. Denny's Restaurant, et al.*, Case No. 2:01-cv-01297; filed 07/05/01

- *Wilson, et al. v. Chevy's Mexican Restaurant, et al.*, Case No. 2:01-cv-01382; filed 07/18/01

- *Wilson v. Chevy's Inc., et al.*, Case No. 2:01-cv-01961; filed 10/22/01

- *Wilson, et al. v. Westfield Corp., et al.*, Case No. 2:01-cv-02176; filed 11/28/01

- *Wilson v. Castle Mgt. Inc., et al.*, Case No. 2:01-cv-02294; filed 12/14/01

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

- *Wilson v. WRI Golden State, et al.*, Case No. 2:02-cv-01407; filed 06/27/02

- *Wilson v. Pelayo, et al.*, Case No. 2:02-cv-02673; filed 12/16/02

- *Wilson v. Vallejo Hotel Group*, Case No. 2:02-cv-02702; filed 12/20/02

- *Wilson v. OCB Restaurant Co., et al.*, Case No. 2:04-cv-00530; filed 03/17/04

- *Wilson v. Norbreck, LLC, et al.*, Case No. 2:04-cv-00690; filed 04/07/04

(*See* RJN, Exhibits 57 - 67 ). In 9 of those 11 cases, Wilson successfully implemented his well-worn "sue, settle and move on" methodology. That is, the parties settled and the cases were voluntarily dismissed without any discovery, motion practice, or court appearances. (*See* RJN, Exhibits 58 - 66).

In the remaining cases (*Wilson v. Norbreck, LLC* and *Wilson v. Schroeder*), the parties filed cross motions for summary judgment. In *Norbreck*, this Court denied Wilson's summary judgment on all claims except for one affirmative defense. The Court granted the defendant's summary judgment motion on all claims. (*See* RJN, Exhibit 67, pp. 5, 12-15). In *Schroeder*, the parties filed cross-motions for partial summary judgment alleging, among other things, that (1) Wilson is disabled; and (2) Wilson had standing to bring the action. On the first issue, the Court found that Wilson failed to conclusively establish that he is disabled, and further found that the existence of Wilson's alleged disability was a disputed issue of material fact precluding summary judgment. (*See* RJN, Exhibit 57, pp. 10:16-18, 11:1-3). On the second issue, the defendant alleged that Wilson "either fabricated his injury claim, or that he intentionally parked his van on the ramp so as to create a situation in which he could claim that he was injured." (*Id.* at p. 12, fn. 1). Although the Court found that Wilson's allegations were sufficient to state an injury of fact, it expressly noted that Wilson would have to prove those allegations at trial before the Court would find that he had standing to bring the lawsuit. (*Id.* at p. 14, fn. 2). The

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

*Schroeder* case subsequently settled. (*Id.* at p. 5).

### c. <u>Credibility</u>

The allegations contained in Wilson's complaints are contrived, identical and not credible. Wilson's complaints in the aggregate reveal a clear intent to harass businesses. Wilson's complaints invariably allege that the existence of "barriers" and "hazards" caused Wilson to suffer "a loss of his civil rights," "physical discomfort," "emotional distress," "mental distress," "mental suffering" and "mental anguish." (*See, e.g.*, RJN, Exhibit 6, ¶¶ 24, 26, 27; Exhibit 7, ¶¶ 24, 26, 27; Exhibit 9, ¶¶ 24, 25, 60; Exhibit 10, ¶¶ 28, 64, 72; Exhibit 11, ¶¶ 13, 15, 16; Exhibit 12, ¶¶ 13, 15, 16; Exhibit 14, ¶¶ 22, 24, 25, 91; Exhibit 15, ¶¶ 22, 24, 26, 27, 93, 96).

It defies belief that Wilson encounters identical "barriers" and "hazards" at every establishment he visits. From a Costco just south of San Diego to an IHOP restaurant in Dixon, Wilson invariably discovers inaccessible parking, inaccessible paths of travel, lack of proper signage, and inaccessible restrooms. (*See, e.g.*, RJN, Exhibit 6, ¶¶ 19, 21, 24, 26; Exhibit 7, ¶¶ 19, 21, 24, 26; Exhibit 9, ¶¶ 20, 21, 26, 60, 68, 79; Exhibit 10, ¶¶ 19-23, 26, 28-31; Exhibit 11, ¶¶ 3, 13; Exhibit 12, ¶¶ 3, 13; Exhibit 14, ¶¶ 19, 22, 24, 40; Exhibit 15, ¶¶ 19, 21, 24). Similarly, it defies belief that Wilson suffered physical injury or "discomfort" every single time he visited a business establishment that he later sued. Wilson's claims that on 85 separate occasions he suffered mental anguish and severe emotional distress during planned visits is simply preposterous. *See Molski I*, 347 F. Supp. 2d at 865 (plaintiff's complaints not credible because plaintiff claims to have suffered "13 nearly identical injuries").

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

d. *Wilson v. Murillo* Is Strikingly Similar To Other Wilson/Frankovich Complaints

Not surprisingly, the Complaint in this case contains all of Wilson's "stock" allegations. (*See* Exhibit 9 to Murillo Decl., ¶¶ 16-18, 21, 40, 41, 47, 48, 62, 63, 65, 68 and Prayer).

| "Stock" Allegation | *Murillo* Complaint |
|---|---|
| Existence of "barriers" and "hazards" | ". . . there was a built up ramp in the access aisle which posed a barrier and hazard to plaintiff RON WILSON" (¶ 17) |
| Types of "barriers" Wilson encountered | • Parking (¶¶ 17, 40)<br>• Exterior path of travel (¶¶ 18, 23, 40)<br>• Men's restroom (¶¶ 18, 21, 23, 40)<br>• Dining room seating (¶ 23) |
| Wilson's "physical discomfort," "emotional distress," "mental distress," "mental suffering" and "mental anguish" | ". . . and further experienced emotional distress, mental distress, mental suffering, mental anguish" (¶¶ 41, 62, 68) |
| Loss of Wilson's "civil rights" | "As a further legal result of the actions of defendants, plaintiff RON WILSON suffered a loss of his civil rights"; ". . . plaintiffs suffered violations of plaintiffs' civil rights..." (¶¶ 41, 47, 50, 60, 62, 68) |

(*See* Exhibit 9 to Murillo Decl., ¶¶ 17, 18, 21, 23, 40, 41, 60, 62, 68). The fact that this Complaint was lifted directly from Frankovich's pleading "assembly line" is further evidenced by the same typographical errors that appear in all of their complaints, beginning with the caption page:

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

- Caption page: "Attorneys for Plaintiffs RON WILSON, * * * "RON WILSON, an individual, Plaintiff*s*";

- "Plaintiff*s* **_do_** not know the relative responsibilities of each of the defendants";

- "denial of civil rights suffered by plaintiff*s* . . . ";

- "have evidenced actual or implied malicious intent toward those members of the public, such as plaintiff*s*...";

- ". . . plaintiff*s* suffered violations of plaintiff*s'* civil rights, including but not limited to **_their_** rights under . . . "

- ". . . on the sole basis that plaintiffs **_are_** persons **_or an entity_** that represents persons with physical disabilities . . . "

- Prayer: * * * (On Behalf of Plaintiff*s* RON WILSON, . . . )

(*See* Exhibit 9 to Murillo Decl., ¶¶ 6, 39, 50, 51, 52, 54, 55, 62, 63 and Prayer (emphasis added).

### 2.    No Objective, Good Faith Expectation of Prevailing

### a.    <u>Wilson Has Disclaimed the Primary Allegations of the Complaint</u>

Like all of Wilson's complaints, the Complaint in this case alleges that this is an architectural "barrier" case:

- "the *existence of architectural barriers* at defendants' place of public accommodation evidence 'actual notice' of defendants' intent not to comply with the [ADA]";

- Defendants' "*failure to remove the architectural barriers* complained of herein created, . . . continued to create continuous and repeated exposure to substantially the same *general harmful conditions* ...";

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

- "The *removal of barriers complained of by plaintiff* . . . was . . . 'readily achievable'";

- Defendants have "carried out a course of conduct of refusing to respond to, or *correct complaints* about, *denial of handicap access* and have *refused to comply* with their legal obligations to make MURILLO'S RESTAURANT accessible";

- Defendants' "past refusals on a day-to-day basis to *remove the barriers complained of herein* evidence despicable conduct . . . ";

- "Defendants' actions and omissions to act constituted discrimination against plaintiff on the sole basis that plaintiff*s are persons or an entity* that represents persons with physical disabilities and unable, *because of the architectural barriers created and maintained by the defendants in violation of the subject laws*, to use the public facilities hereinabove described on a full and equal basis as other persons";

- Plaintiff seeks "*injunctive relief*, compelling [Murillo] to make Murillo's Restaurant . . . *readily accessible to and usable by* individuals with disabilities, per state law."

(*See* Exhibit 9 to Murillo Decl., ¶¶ 7, 38, 39, 40, 42, 48, 49, 50, 51, 62, 65 and Prayer) (emphasis added).

Although the Complaint in this case **on its face** alleges that the Restaurant had and continues to have "architectural barriers" and seeks injunctive relief to require Murillo to remove those alleged existing barriers at the Restaurant, Wilson amazingly disclaimed that this case has anything to do with disability access or architectural barriers. In his deposition, Wilson was instructed by his attorney, Frankovich, not to explain his position.

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

Wilson:    [M]y lawsuit is not about any accessibility issues.

Q:    So you don't contend that there are any code violations or barriers at Murillo's? that's not what this is about?

A:    I can't tell you if they have all been fixed or not.

Q:    So if I understand correctly, this lawsuit is not about having corrective action done at Murillo's. Is that right?

A:    Yes, ma'am.

* * *

Q:    Are you seeking to have any changes made to Murillo's Restaurant . . . ?

A:    Through a lawsuit?

Q:    Correct.

A:    No, ma'am.

Q:    . . . The first sentence of [Paragraph 54 of the Complaint] states, "Plaintiff seeks relief pursuant to remedies set forth in Section 204(a) of the Civil Rights Act of 1964." What are those remedies?

**Frankovoich**: Objection. It's calling for a – a legal opinion as to remedies. I'm gonna instruct him not to answer. I'm also gonna object on a basis that such a question is meant to vex, harass and annoy the plaintiff.

(*See* Wilson Depo., Vol. I, pp. 58:11-23; 61:15-62:13). When asked whether he could articulate the injunctive relief he is seeking, Wilson said "Not at this time." (*See* Wilson Depo., Vol. II, p. 149:14-23). Frankovich then instructed Wilson not to answer questions about the supposed injunctive relief he is seeking. (*See* Wilson Depo., Vol. II, pp. 149:24-150:7, 22-151:20).

What could be more vexatious and demonstrative of an intent to harass a business than to allege the existence of inaccessible conditions at the Restaurant, only to later deny actually pursuing any such claim?

> **b.**    <u>The Only Claim That Wilson Has Not Abandoned Is A Supposed</u>
> <u>"Retaliation" Claim Which The Uncontroverted Evidence</u>
> <u>Demonstrates To Be Completely Fabricated</u>

Having abandoned the claims concerning alleged "barriers," Wilson now contends that this case is about "retaliation." Wilson now asserts that Murillo had him removed from the Restaurant because Wilson had exercised his right to complain about "barriers" at the Restaurant.

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

As described in detail in Murillo's motion for summary judgment, filed concurrently herewith, this "retaliation" claim is a complete fabrication. The videotapes from a surveillance camera clearly refute Wilson's claim.[2] The first tape shows that on March 11, 2005, Wilson and a friend came to the Restaurant and sat at the lowered (*i.e.*, ADA compliant) section of the bar. After years of putting up with covert visits to the Restaurant during which Wilson photographed and measured portions of the Restaurant and sent threatening letters, Murillo felt harassed. She knew that Wilson was not there as a "patron." Wilson and Murillo exchanged words.

Wilson claims that he was then "denied service" and "thrown out" of the Restaurant. That claim, however, is completely belied by the uncontroverted surveillance video that shows (1) Wilson and his friend were served drinks and chips at the bar, (2) Wilson talked with Murillo, (3) Wilson and his friend finished their drinks and emptied the chip basket, (4) Wilson and his friend left the bar area and their empty dishes were removed, (5) approximately 14 minutes after the pair left the bar area, Wilson's friend returned to ask for a receipt, and (6) Wilson never returned.

Moreover, Wilson's claim that he and his friend (Bryon Chapman) were "thrown out" of the Restaurant is further undermined by the second surveillance video. The second video shows that on March 13, 2005, two days after Wilson and Chapman were supposedly unceremoniously "thrown out" by Murillo, Chapman returned to the Restaurant. Chapman sat at the bar, was served, and left without incident. (*See also* Exhibit 11 to Stephenson Decl., Excerpts of Deposition of Frances Murillo, pp. 68:10-25; 70:14-25; 73:5-12; 74:25-75:10).

---

[2] The surveillance tapes are before the Court as exhibits to Murillo's Motion for Summary Judgment.

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

### c. **Wilson's Motivation For Filing ADA Lawsuits Is His Own Financial Gain, Not Increased Accessibility**

Wilson claims to be an advocate for the disabled community, and that his motive is to ensure that business establishments are accessible. (*See, e.g.,* Complaint, ¶ 12). Wilson also claims that he invokes the legal process only when necessary to obtain injunctive relief against business owners and operators. (*Id.* at ¶ 22). These sanctimonious statements, however, are belied by Wilson's longstanding and well-orchestrated course of action.

If, as Wilson asserts, the motive for Wilson's lawsuits were improving access for individuals with disabilities, litigation would not be his method of choice. Rather, he could engage in a dialogue with businesses to educate them about his concerns and work cooperatively with the business community. Instead, however, Wilson pursues legal action. The ADA allows private plaintiffs to sue for injunctive relief and to recover their attorney's fees. It does not allow for any award of money damages to a private plaintiff. 42 U.S.C. §§ 12188(a)(1), (b)(2)(B); 42 U.S.C. § 2000a-3(a). If Wilson's motivation was genuinely to obtain injunctive relief and recover his legal costs, he could allege a single cause of action under the ADA. Wilson, however, does not do that. Instead, Wilson always raises additional state law claims under the Unruh Act and the DPA, and often also includes claims under the now infamous section 17200 of the California Business & Professions Code. (*See* RJN, Exhibits 6-13).

Raising multiple claims is consistent with "an overall pattern of behavior that demonstrates [Wilson's] motivation is, ultimately, to extract a cash settlement." *Molski I,* 347 F. Supp. 2d at 866. As Judge Rafeedie in the Central District recognized, the threat of significant money damages is a much more effective inducement to settle than merely requesting a court order requiring a defendant to make "readily achievable" alterations to a facility. *Id.* That threat

is clearly working. As notable as the sheer number of ADA lawsuits Wilson has filed is the outcome of most of those lawsuits. Of the approximately 85 ADA lawsuits Wilson has filed in the Courts, **one** has been litigated on the merits (a case that Wilson lost). The overwhelming majority of his cases are voluntarily dismissed after settlement. This not only calls into question Wilson's good faith expectation of prevailing on the merits of his claims, but also suggests that he does not even have a reasonable expectation (or intention) of litigating the suits on the merits.

Wilson's own testimony also belies any contention that his ADA lawsuits are about increased accessibility rather than collecting money. For example, Wilson testified that he sued several businesses in the Dixon and Vacaville areas and ultimately settled those lawsuits. Apparently, those settlements provided for the defendants to make certain changes to their establishments and to pay some monetary sum to Wilson and his lawyers. Wilson also testified that after receiving his settlement money, several of those defendants subsequently failed to make any changes to their facilities, thereby breaching the written settlement agreements. Wilson did not sue to enforce the settlement agreements to ensure that accessibility was in fact accomplished. Those defendants did, however, pay Wilson and his lawyers as part of the settlements. (*See* Wilson Depo., Vol. II, pp. 228:16-233:23).

### 3. Wilson Is Always Represented By Counsel In His ADA Lawsuits

Wilson has been represented by counsel in every lawsuit that he has filed in the Federal Courts. Although courts are generally protective of *pro se* plaintiffs, this same protection does not apply to litigants represented by counsel. Hence, this factor also weighs against Wilson. *See Molski I*, 347 F. Supp. 2d at 866, *citing Iwachiw v. N.Y. City Bd. of Education*, 273 F. Supp. 2d 224, 228 (E.D.N.Y. 2003).

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

### 4. Wilson's Lawsuits Are A Burden On The Courts

If a plaintiff's lawsuits cause "needless expense to other parties or unnecessarily burden[s] the courts," this weighs in favor of finding a plaintiff to be a vexatious litigant. *See Molski I*, 347 F. Supp. 2d at 866. Wilson has filed **65 separate ADA lawsuits in the Eastern District, 11 in this Court**. (*See* RJN, Exhibits 2, 57-67). Boilerplate filings of questionable merit divert judicial resources away from cases alleging legitimate and substantial violations of the rights of disabled individuals. The Court must take steps to ensure that aggrieved disabled individuals with bona fide claims can access the judicial system as Congress intended with the passage of the ADA. The judicial system is compromised when serial plaintiffs like Wilson and their vexatious attorneys like Frankovich can use the Federal Courts for financial gain and, in doing so, make a mockery of the true purpose of the ADA. The legitimacy of the Federal Courts must be protected.

### 5. No Other Sanction Would Be Adequate

Wilson's filings may appear legitimate when examined individually. Their vexatious nature, however, is clearly revealed when viewed in the aggregate. Thus, the only effective way to put a reviewing judge on notice of Wilson's vexatious history is to require Wilson to file a copy of a vexatious litigant order from this Court with every new ADA complaint that he seeks to file in this District. This would allow the reviewing judge to assess whether Wilson has raised a bona fide claim of discrimination under the ADA, or whether he was merely bringing another vexatious claim in order to strong arm a business into settling. *See, e.g.*, *In re Billy Roy Tyler*, 839 F. 2d 1290, 129394 (8th Cir. 1988) (per curiam) (holding that a pre-filing order is appropriate where petitioner was able to consistently dress up frivolous claims so that, on the face of the complaint, they appeared to be meritorious).

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

### D. Frankovich Satisfies The Standard For A Vexatious Litigator

In order to find an attorney "vexatious" and to require the attorney to obtain leave of court before filing any new action, the Court must satisfy four requirements: (1) the attorney must be given adequate notice to oppose a restrictive pre-filing order before it is entered; (2) there must be an adequate record for review describing the case filings that support the order; (3) the Court must make substantive findings as to the frivolousness or harassing nature of the filings; and (4) the order must be "narrowly tailored" so that it remedies the attorney's particular abuses. *O'Loughlin v. Doe*, 920 F. 2d 614, 617 (9th Cir. 1990).

#### 1. Frankovich Already Has Been Declared Vexatious

In *Molski II*, Frankovich was deemed a vexatious litigator based upon, among other factors: (a) his litigation history; (b) questionable allegations in his form complaint; (c) claims for "excessive compensatory damages"; and (d) the predominance of "quick settlements." *Molski II*, 359 F. Supp. 2d at 929.

##### a. Frankovich's ADA Litigation History

Litigiousness is a factor the Court should consider "indicative of an intent to harass." *Id.* at 864. As stated above, since approximately January 2000 Frankovich has filed 560 ADA lawsuits in the Federal Courts, **91 of which were filed in the Eastern District**. *See* RJN, Exhibits 1 and 2. In 2004 alone, Frankovich filed 223 ADA lawsuits, a fact Judge Rafeedie found "appalling." *Id.* at 926.

##### b. Frankovich's Form Complaint

In addition to the sheer number of lawsuits filed, the Court must also look at the "textual and factual similarities of the complaints." *Id.* The similarity of the complaints is "another factor the Court [should] consider[] indicative of an intent to harass because it suggests that the

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

individual is "filing boilerplate complaints." *Id.*

### (1)  The Frankovich Form Complaint

Frankovich's form complaint invariably contains some allegation of bodily injury. *See Id.* at 930. Judge Rafeedie found this "stock" allegation to be contrived in order to implicate the defendants' insurance policies. *Id.* In reaching this conclusion, Judge Rafeedie found:

- **The rate of physical injury alleged in the complaints defies common sense**: in every complaint filed in 2004, Frankovich's clients allege a physical injury. In 80% of the complaints, the plaintiff alleges an injury to his or her upper extremities. Many of these injuries are allegedly sustained in similar fashion, such as wheeling over uneven terrain, ascending or descending steps, or squeezing into a door that is too narrow.

- **The complaints uniformly allege physical injury even when the claim appears to directly contradict the facts alleged**: Judge Rafeedie found that the barriers the plaintiffs encountered did not seem to be responsible for any physical injury that he or she alleges. For example, Judge Rafeedie found that Molski often alleged that lack of accessible signage resulted in a claim of physical injury.

- **The only logical reason to contrive minor injuries is to implicate the personal injury provisions of the defendant's insurance policy**: the allegations of physical injury, which are not an essential element of a claim of discrimination under the ADA, thus appear to be included in the complaint to improve the chances of invoking insurance coverage as a source for the payment of damages.

- **Further proof of "canned" allegations was found in a Frankovich's litigation philosophy**: Frankovich informs prospective clients that "[y]ou should know that

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

we use the terms 'emotional distress' and 'negligence' as we prosecute your case. Although we use those terms, we do not file a cause of action based upon negligence, the negligent infliction of emotional distress, or the intentional infliction of emotional distress." In every case filed in 2004, Frankovich's clients allege emotional distress and negligence without bringing a cause of action for negligence or negligent or intentional infliction of emotional distress. 359 F. Supp. 2d at 930-932.

### (2) Wilson And Frankovich Together Have Filed Almost Identical Complaints

The following is a comparison of three complaints (Exhibits 8, 9 and 10 to RJN) filed by Wilson and Frankovich in the Northern District.

| *Wilson v. Ring's Restaurant* Case No. C-04-1128 BZ | *Wilson v. Longs Drug Store* Case No. C-04-1762 | *Wilson v. Marie Callender's* Case No. C-04-4989 PJH |
|---|---|---|
| **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:** | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:** | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:** |
| **1st CAUSE OF ACTION**: For Denial of Access by a Public Accommodation in Violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, *et seq.*) | **1st CAUSE OF ACTION**: For Denial of Access by a Public Accommodation in Violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, *et seq.*) | **1st CAUSE OF ACTION**: For Denial of Access by a Public Accommodation in Violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, *et seq.*) |
| **2nd CAUSE OF ACTION**: For Denial of Full and Equal Access in Violation of California Civil Code §§ 54, 54.1 and 54.3 | **2nd CAUSE OF ACTION**: For Denial of Full and Equal Access in Violation of California Civil Code §§ 54, 54.1 and 54.3 | **2nd CAUSE OF ACTION**: For Denial of Full and Equal Access in Violation of California Civil Code §§ 54, 54.1 and 54.3 |
| **3rd CAUSE OF ACTION**: For Denial of Accessible Sanitary Facilities in Violation of California | **3rd CAUSE OF ACTION**: For Denial of Accessible Sanitary Facilities in Violation of California | **3rd CAUSE OF ACTION**: For Denial of Accessible Sanitary Facilities in Violation of California |

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| | | |
|---|---|---|
| Health & Safety Code § 19955, *et seq.* | Health & Safety Code § 19955, *et seq.* | Health & Safety Code § 19955, *et seq.* |
| **4th CAUSE OF ACTION:** For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of California Civil Code § 51, *et seq.* (The Unruh Civil Rights Act) | **4th CAUSE OF ACTION:** For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of California Civil Code § 51, *et seq.* (The Unruh Civil Rights Act) | **4th CAUSE OF ACTION:** For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of California Civil Code § 51, *et seq.* (The Unruh Civil Rights Act) |
| **5TH CAUSE OF ACTION:** For Unfair Business Practices in Violation of California Business and Professions Code § 17200, *et seq.* **DEMAND FOR JURY** Paragraph 2: "The denial of access was in violation of both federal and California legal requirements, and plaintiff Ron Wilson suffered violation of his civil rights to full and equal access, and was *embarrassed and humiliated.*" | **5TH CAUSE OF ACTION:** For Unfair Business Practices in Violation of California Business and Professions Code § 17200, *et seq.* **DEMAND FOR JURY** Paragraph 2: "The denial of access was in violation of both federal and California legal requirements, and plaintiff Ron Wilson suffered violation of his civil rights to full and equal access, and was *embarrassed and humiliated.*" | **5TH CAUSE OF ACTION:** For Unfair Business Practices in Violation of California Business and Professions Code § 17200, *et seq.* **DEMAND FOR JURY** Paragraph 2: "The denial of access was in violation of both federal and California legal requirements, and plaintiff Ron Wilson suffered violation of his civil rights to full and equal access, and was *embarrassed and humiliated.*" |
| Paragraph 15: "That members of DREES, like plaintiff Ron Wilson, will of have been guests and invitees at the subject RING'S RESTAURANT." | Paragraph 15: "That members of DREES, like plaintiff Ron Wilson, will of have been guests and invitees at the subject LONGS DRUG STORE." | Paragraph 15: "That members of DREES, like plaintiff Ron Wilson, will of have been guests and invitees at the subject MARIE CALLENDER'S." |
| Paragraph 28: "Plaintiff RON WILSON suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further | Paragraph 24: "Plaintiff RON WILSON suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further | Paragraph 30: "Plaintiff RON WILSON suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further |

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| | | |
|---|---|---|
| *suffered bodily injury (including, but not limited to, fatigue, stress, strain and pain* in wheeling and attempting to enter the restroom and use the buffet line." | *suffered bodily injury (including, but not limited to, fatigue, stress, strain and pain* in wheeling and attempting to and/or transferring over or on to barriers negligently maintained thereby becoming a legal result of injuries sustained by plaintiff." | *suffered bodily injury (including, but not limited to, fatigue, stress, strain and pain* in wheeling and attempting to and/or transferring to, from, on, over or through architectural barriers." |
| Paragraph 28: Plaintiff suffered "physical discomfort, emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, *shame, humiliation, embarrassment, anger, chagrin, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access,* all to his damages as prayed hereinafter in an amount within the jurisdiction of this court." | Paragraph 24: Plaintiff suffered "physical discomfort, emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, *shame, humiliation, embarrassment, anger, chagrin, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access,* all to his damages as prayed hereinafter in an amount within the jurisdiction of this court." | Paragraph 30: Plaintiff suffered "physical discomfort, emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, *shame, humiliation, embarrassment, anger, chagrin, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access,* all to his damages as prayed hereinafter in an amount within the jurisdiction of this court." |
| Paragraph 29: "Defendants', and each of their, failure to remove the architectural barriers complained of herein created, at the time of plaintiff RON WILSON's first visit to said public accommodation, and continues to create continuous and repeated exposure to substantially the same general harmful conditions which caused plaintiff RON WILSON *fatigue, stress, strain and* | Paragraph 25: "Defendants', and each of their, failure to remove the architectural barriers complained of herein created, at the time of plaintiff RON WILSON's first visit to said public accommodation, and continues to create continuous and repeated exposure to substantially the same general harmful conditions which caused plaintiff RON WILSON *fatigue, stress, strain and* | Paragraph 31: "Defendants', and each of their, failure to remove the architectural barriers complained of herein created, at the time of plaintiff RON WILSON's first visit to said public accommodation, and continues to create continuous and repeated exposure to substantially the same general harmful conditions which caused plaintiff RON WILSON *fatigue, stress, strain and* |

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| | | |
|---|---|---|
| *pain* in futilely attempting to overcome the architectural barriers as stated herein." | *pain* in futilely attempting to overcome the architectural barriers as stated herein." | *pain* in futilely attempting to overcome the architectural barriers as stated herein." |
| Paragraph 31: the facilities "*continue to the date of filing this complaint to deny equal access to plaintiff and other persons with physical disabilities in these and other ways.*" | Paragraph 26: the facilities "*continue to the date of filing this complaint to deny equal access to plaintiff and other persons with physical disabilities in these and other ways.*" | Paragraph 33: the facilities "*continue to the date of filing this complaint to deny equal access to plaintiff and other persons with physical disabilities in these and other ways.*" |
| Paragraph 33: "To encourage defendants to bring the RING'S RESTAURANT into compliance with the law, *plaintiffs also seek daily damages of not less than $4,000/day, pursuant to §§ 52(a) and 54.3, California Civil Code, for each day after his visit* until such time as the RING'S RESTAURANT is made fully accessible to plaintiffs and to other persons with physical disabilities." | Paragraph 29: "To encourage defendants to bring the . . . LONGS DRUG STORE into compliance with the law, *plaintiffs also seek daily damages of not less than $4,000/day, pursuant to §§ 52(a) and 54.3, California Civil Code, for each day after his visit* until such time as . . . LONGS DRUST STORE is made fully accessible to plaintiffs and to other persons with physical disabilities." | Paragraph 35: "To encourage defendants to bring the restaurant into compliance with the law, *plaintiffs also seek daily damages of not less than $4,000/day, pursuant to §§ 52(a) and 54.3, California Civil Code, for each day after his visit* until such time as the restaurant is made fully accessible to plaintiffs and to other persons with physical disabilities." |
| Paragraph 34: "[D]efendants have been *negligent* in their affirmative duty to identify the architectural barriers complained of herein and *negligent* in the removal of some or all of said barriers." | Paragraph 30: "[D]efendants have been *negligent* in their affirmative duty to identify the architectural barriers complained of herein and *negligent* in the removal of some or all of said barriers." | Paragraph 36: "[D]efendants have been *negligent* in their affirmative duty to identify the architectural barriers complained of herein and *negligent* in the removal of some or all of said barriers." |
| Paragraph 35: "Plaintiffs seek an order from this court compelling defendants to make the RING'S RESTAURANT accessible to persons with disabilities." | Paragraph 31: "Plaintiffs seek an order from this court compelling defendants to make the . . . LONGS DRUG STORE accessible to persons with disabilities." | Paragraph 37: "Plaintiffs seek an order from this court compelling defendants to make the MARIE CALLENDER'S accessible to persons with disabilities." |
| Paragraph 36: "The acts and omission of defendants, and each of them, in failing to provide the required | Paragraph 32: "The acts and omission of defendants, and each of them, in failing to provide the required | Paragraph 38: "The acts and omission of defendants, and each of them, in failing to provide the required |

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

| accessible public facilities at the time of plaintiff's visit and injuries, indicate actual and implied malice toward plaintiffs, and despicable conduct carried out by defendants, and each of them, . . . and justify exemplary damages pursuant to § 3294 of the Civil Code." | accessible public facilities at the time of plaintiff's visit and injuries, indicate actual and implied malice toward plaintiffs, and despicable conduct carried out by defendants, and each of them, . . . and justify exemplary damages pursuant to § 3294 of the Civil Code." | accessible public facilities at the time of plaintiff's visit and injuries, indicate actual and implied malice toward plaintiffs, and despicable conduct carried out by defendants, and each of them, . . . and justify exemplary damages pursuant to § 3294 of the Civil Code." |
|---|---|---|

### c.    Excessive Compensatory Damages

Another factor supporting Judge Rafeedie's determination that Frankovich is a vexatious litigator is that Frankovich's clients seek damages of $4,000/day for each day from the date of their visit to the establishment to the date when repairs are completed. Judge Rafeedie also found that the complaints filed by Frankovich reveal a regular practice of the plaintiffs to wait up to one year before filing their claims, during which time the requested damages continue to accumulate. 359 F. Supp. 2d at 932. Wilson alleges that he encountered "barriers" at Murillo's Restaurant on August 3, 2001 and December 9, 2004. (*See* Exhibit 9 to Murillo Decl., ¶¶ 17, 21). Wilson seeks statutory damages ($4,000) "for the date of incident and for each day that plaintiffs [sic] were deterred from returning to the [Restaurant]." (*Id.* at Prayer). Wilson did not commence the action against Murillo until August 3, 2005. (*Id.* at p. 1).

### d.    Quick Settlements

Judge Rafeedie found that the unusual amount of settlements in cases filed by Frankovich was indicative of an extortion scheme. In reaching this conclusion, Judge Rafeedie rejected Frankovich's argument that the lawsuits settle because the defendants lack any meritorious defense. Rather, Judge Rafeedie found that (1) even if a party has a meritorious defense, the cost

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

of litigating the matter would likely exceed the cost of settling; and (2) even if innocent, parties may prefer to avoid the rigors of litigation and would be willing to settle in order to "'avoid litigation and buy their peace.'"   359 F. Supp. 2d at 933.

### 2. This Case Is Similarly Frivolous And Vexatious

As discussed above, the complaint in this case contains many of the boilerplate provisions found in other Wilson and Frankovich complaints.  As is described in Murillo's Rule 56 motion pending before the Court, this case, like all of Wilson's other cases, is frivolous and vexatious.  Wilson has alleged the existence of "barriers" at the Restaurant, but now says he is unaware of whether any "barriers" presently exist.  Wilson alleges "retaliation" by Murillo, but the videotape from a surveillance camera refutes that contention.  In short, the only claim that Wilson has not abandoned is, as the evidence before the Court demonstrates, completely fabricated.

### 3. Gamesmanship And Dilatory Tactics

Frankovich routinely engages in intentional gamesmanship and dilatory tactics with defendants and their counsel that necessarily drives up the cost of litigation.  For example, in this case, Wilson claims he is under orders from his doctor to restrict his participation in depositions to no more than 4 hours per day, inclusive of travel time to and from the deposition site.  As a result, defense counsel often require two or three sessions to complete Wilson's depositions. (*See, e.g.*, Wilson Depo., Vol. II, p. 126:12-20).  In this case, Murillo noticed Wilson's deposition for December 20, 2005 and served the notice on Wilson's counsel on November 7, 2005.  Almost two hours into Wilson's deposition, Frankovich produced a letter from Wilson's doctor dated **October 18, 2005** stating the "4 hour restriction" and advised Murillo's counsel that the deposition would have to conclude within the next hour. (*See* Wilson Depo., Vol. I, p. 80:2-

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

12). Although Frankovich admitted he was aware of this letter from Wilson's doctor when he received the deposition notice approximately 6 weeks earlier and was also aware that the deposition (and the services of the court reporter and videographer) was scheduled for a full day, he chose not to advise Murillo's counsel of this fact until two hours into the deposition. (*Id.* at pp. 80:15-81:14). It is also notable that Wilson only agreed to testify for a total of 3 hours that day, apparently claiming that he needs a full hour to get home. The deposition, however, was noticed in Fairfield, which is approximately 20 minutes from Wilson's home in Dixon, in order to accommodate Wilson's request that he not travel far from his home per his doctor's orders.

The gamesmanship continued when on February 27, 2006, the afternoon prior to Wilson's **third** session of his deposition, Frankovich called Murillo's counsel and advised her that Wilson would not be appearing for his deposition the next morning. Wilson's deposition was never concluded. (*See* Stephenson Decl., ¶ 5; Exhibit 4 to Stephenson Decl.).

When Wilson actually appears for his deposition, the obstructionist tactics continue as Frankovich makes numerous frivolous objections and improperly **instructs Wilson not to answer** questions based upon an objection to the form of the question such as "argumentative," "calls for a legal conclusion," or has been "asked and answered." On 11 occasions, Wilson was instructed not to answer. (*See, e.g.*, Wilson's Depo., Vol. I, p. 109:3-13; Vol. II, pp. 151:13-20; 152:18-25; 166:1-5; 167:19-168:7, 19-24; 174:14-21; 174:24-175:7; 215:22-216:4; 216:8-20); Stephenson Decl., ¶ 6.

Wilson and Frankovich also treat the written discovery process as a game that they purposely manipulate in an effort to increase attorney's fees and push the other party into a settlement. Among other things, Wilson and Frankovich stonewall discovery and propound discovery that is not tailored to the particular case. For example, Wilson admits that he that he

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

almost always carries a camera with him when he is in public and that he has carried a camera on at least one occasion when he "visited" the Restaurant. (*See* Wilson Depo., Vol. I, p. 93:10-21). In response to Murillo's first set of document requests, however, Wilson states that he has no photographs of the exterior or interior of the Restaurant. (*See* Exhibit 5 to Stephenson Decl., Wilson's Responses to Murillo's First Set of Requests For Production of Documents, Response Nos. 19, 20. Moreover, Wilson has completely abandoned any claim for injunctive relief relating to "barrier removal" at the Restaurant, and now asserts "that's not what this lawsuit is about." (*See* Wilson Depo., Vol. II., p.150:2-5). Nevertheless, Frankovich propounded interrogatories and document requests seeking information and documents relating to the construction and alteration history of the Restaurant, including, among other things, all proposals and invoices for work performed to "make [the Restaurant] accessible to persons with disabilities," the date the Restaurant was originally constructed, and the name of every person or entity Murillo's "relied upon to identify architectural barriers" at the Restaurant. (*See* Wilson's First Set of Interrogatories to Murillo, Rog. Nos. 5, 6, 8-10; Wilson's First Set of Requests For Production of Documents, Request Nos. 1, 2, attached as Exhibits 6 and 7, respectively, to the Stephenson Decl.).

### 4. Frankovich Also Files Cases In State Court Alleging Violations Of Federal Law

Frankovich does not limit his vexatious conduct to the Federal Courts in California. After he was declared "vexatious" in the Central District of California, Frankovich filed at least 4 cases in the California state courts alleging violations of the ADA. (*See* RJN, Exhibit 3(a)-(d)). One case was removed to the Eastern District, 1 was removed to the Northern District, and 2 cases were removed to the Central District. (*Id.*). This case against Murillo is one of the 4

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

removed cases. (*Id.* at Exhibit 3(a)). In the two Central District cases, Frankovich's client is yet another professional plaintiff, Les Jankey. (*Id.* at Exhibits 3(b) and 3(c)).

### 5. The Requested Order Is Proper

This Court has a duty and an obligation to protect the public from unscrupulous practitioners. The evidence before the Court establishes that for over five years Frankovich has engaged in a pattern of unethical behavior ultimately designed to extort money from businesses and their insurers. Hence, Murillo respectfully submits that in order to adequately protect the public the Court should issue a pre-filing order that requires Frankovich to seek leave of court before filing any new ADA lawsuits in the Eastern District of California.

## V. Murillo Is Entitled To Sanctions

### A. 28 U.S.C. Section 1927

Any attorney who "so *multiplies the proceedings* in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). "Unreasonably" and "vexatiously" requires a showing of "bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. General Motors Corp.*, 153 F. 3d 242, 246 (5th Cir. 1998). "Bad faith" may be found when an attorney knowingly or recklessly pursues a frivolous claim, or engages in litigation tactics that needlessly obstruct the litigation of nonfrivolous claims. *Schwartz v. Million Air, Inc.*, 341 F. 3d 1220, 1225 (11th Cir. 2003); *In re Keegan Management Co., Secur. Litig.*, 78 F. 3d 431, 436 (9th Cir. 1996).

A party demonstrates "bad faith" by "delaying or disrupting the litigation." *Hutto v. Finney*, 437 U.S. 678, 689, 98 S.Ct. 2565 (1978). *See also Resolution Trust Corp. v. Dabney*, 73 F. 3d 262, 266 (10th Cir. 1995) (attorney was properly sanctioned under section 1927 for

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

instructing witness not to answer questions at deposition on the basis of relevance; such conduct, viewed objectively, manifested intentional or reckless disregard for the attorney's duties to the court). Non-frivolous filings are sanctionable under section 1927 if made with the intent to harass. *In re Keegan, supra*, 78 F. 3d at 436.

Imposition of section 1927 sanctions is appropriate as soon as the misconduct appears. *Salstrom v. Citicorp Credit Services, Inc.*, 74 F. 3d 183, 185 (9th Cir. 1996). Evidence of prior misconduct may be admissible to show the attorney's improper motives or state of mind in the present proceedings. *Fox Valley Const. Workers Fringe Benefits Funds v. Pride of The Fox Masonry & Expert Restorations*, 140 F.3d 661, 667 (7th Cir. 1998) (counsel's "sharp practices" in representing same client in earlier lawsuit admissible to show his intent to "vexatiously and unreasonably" delay present proceedings).

Sanctions under section 1927 can be awarded against the law firm as well as members of the firm responsible for the "unreasonable and vexatious" conduct. *Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F. Supp. 100, 102 (SDNY 1990). The attorney may be ordered to pay the opposing party the "excess" costs, expenses and fees resulting from the attorney's improper conduct. 28 U.S.C. § 1927; *United States v. Blodgett*, 709 F. 2d 608, 610 (9th Cir. 1983). The Ninth Circuit has upheld section 1927 sanctions in the absence of specific findings of wrongful intent where counsel's "bad faith" is apparent from the record. *See Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F. 3d 1112, 1118 (9th Cir. 2000).

**B.    The Court's Inherent Authority To Issue Sanctions**

Federal courts have inherent power to impose sanctions against both attorneys and parties for "bad faith" conduct in litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-766, 100 S.Ct. 2455 (1980). The

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

Court's inherent powers are governed "not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, *supra*, 501 U.S. at 43. Sanctions under the Court's inherent power may be imposed either on motion of a party or by the Court sua sponte. *Piper*, *supra*, 447 U.S. at 765.

"Bad faith" conduct may be sanctioned under the Court's inherent powers even if it is also sanctionable under other rules, such as Rule 11 or 28 U.S.C. Section 1927. *Chambers*, *supra*, 501 U.S. at 46-48 ("These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions"). Sanctions against a lawyer or a party under the Court's inherent power are proper where the Court finds that the lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers*, *supra*, 501 U.S. at 45-46. *See also Pickern v. Pier 1 Imps.*, 339 F. Supp. 2d 1081, 1091 (E.D. Ca 2004) (sanctions are appropriate under section 1927 when "the proceeding is conducted in bad faith for the purpose of delay or increasing costs").

Sanctions are available for a variety of willful actions, "including recklessness when combined with an additional factor such as frivolousness, harassment or an improper purpose." *Fink v. Gomez*, *supra*, 239 F. 3d at 994. The presence of a meritorious claim does ***not*** prevent a finding of "bad faith." *See Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F. 3d 730, 732 (9th Cir. 1995) ("where a litigant is substantially motivated by vindictiveness, obduracy or mala fides, the assertion of a colorable claim will not bar assessment of attorney's fees"). Moreover, "bad faith" may be found not only in the claims asserted (*i.e.*, frivolous claims) but also in the conduct of the litigation. *Piper*, *supra*, 447 U.S. at 766. Sanctions under the court's inherent power have been upheld on findings that the parties or lawyers engaged in dilatory tactics during discovery or courtroom hearings. *Lipsig v. National Student Marketing Corp.*, 663

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

F.2d 178, 181 (D.C. Cir. 1980).

Sanctions under the Court's inherent power may be imposed against the party or entity who controls the litigation and is responsible for the abusive conduct. *Lockary v. Kayfetz*, 974 F.2d 1166, 1169 (9th Cir. 1992). Sanctions that may be imposed include, among other things, ***prohibition on representing future plaintiffs in the same type of case without leave of court***, censure or formal reprimand, a fine payable to the Court, imposition of attorney's fees and costs on the offending party or counsel), an award of compensatory damages for harm resulting from the sanctioned counsel's misconduct, suspension or disbarment of counsel, default or dismissal, and a reduction of attorney's fees provided for in a contingency fee agreement. *See, e.g., Toon v. Wackenhut Corrections Corp.*, 250 F. 3d 950, 954 (5th Cir. 2001); *Thomas v. Tenneco Packaging Co., Inc.*, 293 F. 3d 1306, 1322 fn. 24 (11th Cir. 2002); *Resolution Trust Corp. v. Dabney*, 73 F. 3d 262, 267 (10th Cir. 1995); *B.K.B. v. Maui Police Dept.*, 276 F. 3d 1091, 1108-1109 (9th Cir. 2002).

An award of attorney's fees under the Court's inherent power is not limited to "excess" costs or fees. The fee award must relate to the "bad faith" conduct at issue, but is committed to the district court's sound discretion and is reviewable only for abuse. *General Signal Corp. v. Donallco, Inc.*, 787 F. 2d 1376, 1380 (9th Cir. 1986). The Court may impose such sanctions as are necessary to compensate the innocent party, to vindicate the affront to the Court, and to ensure that the abuses are not repeated. *Chambers, supra*, 501 U.S. at 56-57.

## VI.    CONCLUSION

Pre-filing orders are justified and necessary to prevent Wilson and Frankovich from filing any further vexatious complaints alleging violations of federal law. The "shotgun litigation" tactics described herein undermine both the spirit and intent of the ADA. In addition to abusing

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

a dignified law and making a mockery of individuals with disabilities who have legitimate claims, Wilson's allegations of being the innocent victim of hundreds of physical and emotional injuries over the last several years defy belief and common sense. Wilson, however, has not acted alone. Wilson has been aided and abetted by his attorney, Frankovich, who has already been declared a vexatious litigator in the Central District. Frankovich has demonstrated an ability to recruit serial plaintiffs who make nearly identical claims. A pre-filing order is the least restrictive sanction that protects the public and the Federal Courts from both Wilson and Frankovich. A pre-filing order will serve as a bulwark that not only shields this Court and prospective defendants from vexatious litigation, but also protects the purpose and spirit of the ADA. A pre-filing order will not limit the right of a legitimately aggrieved disabled individual to seek legal relief under the ADA; it will only prevent abuse of that law by professional plaintiffs, like Wilson, and their lawyers, such as Frankovich, whose priority is their own financial gain, and not "the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

Wilson and Frankovich are vexatious litigants. Murillo respectfully requests that the Court issue orders that provide:

1.       Wilson must file a motion for leave to file a complaint before any new litigation is filed in, and at the time any complaint is removed to the United States District Court for the Eastern District of California alleging violations of Title III of the ADA along with a declaration stating (a) that the matters asserted in the new complaint have never been raised and disposed of on the merits by any court; (b) that the claim or claims are not frivolous or made in bad faith; and (c) that Wilson has conducted a

GROTTA, GLASSMAN & HOFFMAN, P.C.
388 Market Street, Suite 500, San Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

reasonable investigation of the facts and that investigation supports his

claim or claims; and must submit a copy of this Court's order, a

declaration and a copy of the proposed filing with every motion for leave;

2.     The Frankovich Group, as presently constituted and as it may hereafter be

constituted, is required to file a motion requesting leave of court before

representing any plaintiff in an action filed in, and at the time any

complaint is removed to the United States District Court for the Eastern

District of California alleging violations of Title III of the ADA, and the

Frankovich Group must submit a copy of this Court's order with every

motion for leave; and

3.     For any and all sanctions this Court deems appropriate pursuant to 28

U.S.C. Section 1927 and the Court's inherent power.

Dated: May 4, 2006                    GROTTA GLASSMAN & HOFFMAN, P.C.

By _____
                                     KAREN L. STEPHENSON
                                     Attorneys for Defendant
                                     FRANCES MURILLO
                                     dba MURILLO'S MEXICAN FOOD

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

## PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 years and not a party to this action; my business address is 388 Market Street, San Francisco, California 94111.

On May _10_ , 2006 I served the foregoing **DEFENDANT'S NOTICE OF MOTION AND MOTION TO HAVE RONALD S. WILSON AND THOMAS E. FRANKOVICH DECLARED VEXATIOUS LITIGANTS, FOR PRE-FILING ORDERS AND FOR SANCTIONS AGAINST WILSON AND FRANKOVICH; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested party in this action by placing true copies thereof enclosed in sealed envelope addressed as follows:

Thomas E. Frankovich, Esq.                    Attorney for Plaintiff
Thomas E. Frankovich, APLC                   Ron Wilson
2806 Van Ness Avenue
San Francisco, CA 94109

**PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _10_ day of May 2006 at San Francisco, California.

_Karen Stephenson_

---

DEFENDANT'S NOTICE OF MOTION AND MOTION RE VEXATIOUS LITIGANTS

GROTTA, GLASSMAN &
HOFFMAN, P.C.
388 Market Street, Suite 500, San
Francisco, CA 94111

543900